UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON BAKER,<br><br>        Plaintiff,<br>v.<br>JASON ENSIGN,<br>        Defendants.<br><br>AND RELATED COUNTER-CLAIM AND THIRD PARTY COMPLAINT | Civil No. 11cv2060 JAH (WVG)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THIRD PARTY DEFENDANTS CITY OF SAN DIEGO, WILLIAM LANSDOWNE AND DAVID SPITZER'S MOTION TO DISMISS** [Doc. No. 26] |

**INTRODUCTION**

On June 24, 2011, Jason Ensign, Defendant/Counter-claimant, filed a counterclaim against Cameron Baker and a third party complaint against City of San Diego, San Diego Police Chief William Lansdowne, David Spitzer, Elite Show Services, Inc., Parham Hirari-Moghaddam, Tyler Wenbourne, Matthew Keasler, Joel Brase, Jason Biggers, Sifakis, and Does 1-100. Third Party Defendant City of San Diego ("the City") removed the action to federal court on September 6, 2011. Ensign filed an amended counterclaim and third party complaint ("FATPC") on December 6, 2011, asserting claims for violation of civil rights under 42 U.S.C. § 1983, Monell, malicious prosecution, assault and battery, false arrest/false imprisonment, intentional infliction of emotional distress, negligence, and negligent employment, supervision and training.

Thereafter, City of San Diego, Lansdowne, and Spitzer ("Movants") filed a motion

to dismiss the third party complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). After seeking additional time to do so, Ensign filed an opposition to the motion. Movants filed a reply.

## LEGAL STANDARD

Defendant seeks dismissal of the complaint for failure to state a claim. Rule 12(b)(6) tests the sufficiency of the complaint. See Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. See Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. Robertson, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. See Thompson v. Davis, 295 F.3d 890, 895 (9th Cir.

2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations.  See Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir. 2003); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice.  See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts.  See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

Third party defendants seek an order dismissing the action against them with prejudice.  They contend the amended third party complaint which asserts nine causes of action appears to assert only the first two, the claim for violation of civil rights under section 1983, and the Monell claim, against the moving parties.  However, the Movants address the state causes of action in addition to the first two causes of action in their motion.

**I. Request for Judicial Notice**

Movants seek judicial notice of documents in support of their motion to dismiss.

**A.     Legal Standard**

Generally, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Lee v. Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).  "When matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . ." Id. (citation omitted).  A court, however, may look to facts proper for judicial notice without converting a Rule 12(b)(6) motion to one for summary judgment even though those facts are beyond the complaint.  See Mack v.

1 S. Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir.1986), abrogated in part on other
2 grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104 (1991).

3       Federal Rule of Evidence 201 allows a court to take judicial notice of an
4 adjudicative fact "not subject to reasonable dispute in that it is . . . capable of accurate and
5 ready determination by resort to sources whose accuracy cannot be reasonably
6 questioned."  "Adjudicative facts are those to which the law is applied in the process of
7 adjudication.  They are the facts that normally go to the jury in a jury case." Grason Elec.
8 Co. v. Sacramento Mun. Util. Dist., 571 F. Supp. 1504, 1521 (E.D. Cal. 1983) (citation
9 omitted).

10 **B.    Analysis**

11       Defendant asks the Court to take judicial notice of two documents, attached as
12 Exhibits 1 and 2 to their request for judicial notice.  See Doc. No. 26-2.  Exhibit 1 is a
13 court order filed in People of the State of California v. Jason Ensign, Superior Court of
14 California, County of San Diego dated May 9, 2011.  Exhibit 2 is a court order containing
15 factual findings filed August 5, 2011, in the same case.  In response, Ensign argues the
16 documents may not be used for the truth of the factual findings contained therein.
17 Movants do not respond to this argument.

18       Here, the Court first notes that, unless Movants intended to request that this Court
19 take judicial notice of the fact that the documents attached as Exhibits 1 and 2 merely
20 exist, it appears Movants misapprehend the concept of judicial notice.  Movants' request
21 fails to list the adjudicative facts as to which Movants would like this Court to take judicial
22 notice.  Nevertheless, upon review of the motion to dismiss, it is clear Movants seek the
23 Court take judicial notice of the findings of facts set forth in the orders.  While a court
24 may take judicial notice of the fact that a case has been filed in another court, "[a]s a
25 general rule, a court may not take judicial notice of proceedings or records in another cause
26 so as to supply, without formal introduction of evidence, facts essential to support a
27 contention in a cause then before it."  M/V Am. Queen v. San Diego Marine Constr.
28 Corp., 708 F.2d 1483, 1491 (9th Cir.1983); see also Wyatt v. Terhune, 315 F.3d 1108,

1114 n.5 (9th Cir. 2003) ("Factual findings in one case ordinarily are not admissible for their truth in another case through judicial notice").  As such, the Court denies Movants' request for judicial notice.

**II.  First Cause of Action for Violation of 42 U.S.C. Section 1983**

Movants argue Ensign fails to state a claim under section 1983 against either Spitzer or Lansdowne.  To state a claim for violation of constitutional rights under 42 U.S.C. § 1983, Plaintiff must allege facts to show that (1) a right secured by the Constitution or the laws of the United States was violated, and (2) the alleged violation was committed by a person acting under the color of state law.  See Long v. County of Los Angeles, 442F.3d 1178, 1185 (9th Cir. 2006).

**A. Lansdowne**

Movants maintain that although the first cause of action excludes Lansdowne, the prayer for punitive and exemplary damages included in the first cause of action does not specifically exclude him.  However, upon review of the third party complaint, it is clear the first cause of action is not asserted against Lansdowne, as Ensign sets forth no factual allegations involving Lansdowne and specifically excludes him in the heading.  The failure to exclude him from the prayer from damages appears  inadvertent.  Accordingly, the motion to dismiss the claim against Lansdowne is DENIED as moot.

**B.  Spitzer**

Movants contend Ensign's section 1983 claim fails because Spitzer did not violate Ensign's constitutional rights and Spitzer is entitled to qualified immunity.  As an initial matter, the third party complaint fails to succinctly and clearly present the elements of each section 1983 claim so as to provide fair notice to the defendants.  See Jones v. Community Redevelopment Agency of City of Los Angeles, 733 F.2d 646, 649 (9th Cir 1984).   In the poorly drafted complaint, Ensign's first cause of action includes all claims sought under section 1983, including excessive force; false arrest; First Amendment, freedom of speech and First Amendment, retaliation.  The allegations contained in the section entitled "First Cause of Action" are conclusory allegations against Spitzer and

others. Ensign, however, "refers and repleads each and every allegation contained" in the previous paragraphs. This requires the parties and this Court to choose which facts support the particular alleged constitutional violation in support of the first cause of action. While this may be grounds for dismissing the first cause of action in its entirety, this Court will address the specific claims as to Defendant Spitzer to determine whether Ensign states a claim.

Ensign alleges San Diego City Council approved San Diego City Municipal Ordinance 590202(a)(7), which makes it unlawful to "behave in so noisy, boisterous or rowdy a manner as to disturb spectators at any event" and authorizes San Diego Police Department and Qualcomm security to eject an individual who behaves in such a manner from the stadium. FATPC ¶ 12. According to Ensign's allegations asserted against Spitzer, he was arrested by Elite security staff at Qualcomm Stadium after he was evicted from the stadium for waving his middle finger at a large aggressive crowd. See id. ¶¶ 20, 21. He was beaten, kicked, pummeled, pinned to the ground and handcuffed by the Elite staff. Id. ¶ 20. The Elite staff handed Ensign over to Spitzer, the San Diego Police Officer on duty, and Hirari, an Elite staff member, told Spitzer he evicted Ensign for using his middle finger towards a crowd and Hirari admitted to physically grabbing Ensign before Ensign grabbed a railing. Id. ¶ 21. Three Charger fans told Spitzer that Ensign did nothing to provoke the beating meted out by the Elite staff. Id. Ensign further alleges Spitzer, along with others, fabricated reports to create a picture of an out of control Ensign resisting arrest and committing battery., and Baker, an employee of Elite, additionally reported that Ensign punched him in the jaw without provocation causing serious injury and asserted to law enforcement and others that he had no prior existing injury to his jaw. Id. ¶¶ 23, 24.

**1. First Amendment**

Movants argue the claims for violation of Ensign's First Amendment rights fails because Ensign had no constitutionally protected right to "flip off" the crowd and Spitzer was not present when Ensign was removed from the stands by Elite staff. They further

argue the retaliation claim fails because Spitzer had no duty to release Ensign under California Penal Code Section 849(b). They maintain this code section provided Spitzer the discretion to release Ensign and it contains no private right of action.

In opposition, Ensign argues Spitzer retaliated against Ensign for exercising his First Amendment rights and the causes of action flow from the retaliation.

Movants include a small discussion of public forum and speech while Ensign prefaces his opposition with an extensive discussion regarding freedom of speech and the unconstitutionality of the ordinance and Charger's Fan Code of Conduct which lead to Ensign's arrest. The Court finds it is unnecessary to analyze those First Amendment issues which would require consideration of facts outside the complaint. As currently pled, Ensign fails to state a claim for violation of his First Amendment rights against Spitzer under section 1983.

To state a claim for violation of his first amendment rights, Ensign must allege facts showing (1) he engaged in speech or conduct protected under the First Amendment; (2) the defendant took action against him, and (3) the protected speech or conduct or the chilling of the speech or conduct was a substantial motivating factor for the defendant's actions. See Sloman v. Tadlock, 21 F.3d 1462 (9th Cir. 1994). To state a claim for retaliation, a plaintiff must demonstrate "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." Blair v. Bethel School Dist., 608 F.3d 540, 543 (9th Cir. 2010).

As alleged, Ensign fails to show Spitzer's failure to release him after he was "arrested" by Elite staff was done to prevent Ensign from engaging in protected conduct or speech and, thereby, fails to demonstrate a causal relationship as required to properly assert a claim for violation of his First Amendment rights against Spitzer. Accordingly, the First Amendment clam is dismissed as to Spitzer.

### 2. Fourth Amendment

Movants argue Spitzer did not violate Ensign's Fourth Amendment rights as it is clear from the facts alleged that Spitzer conducted an independent investigation and based on the investigation, which included talking with Elite security personnel, there was probable cause to take Ensign into custody and "arrest" him.

Ensign argues Spitzer had no right to arrest Ensign when he defended himself from an unlawful attack and Spitzer had an independent duty to determine probable cause.

A warrantless arrest must be supported by probable cause. See United States v. Bueno-Vargas, 383 F.3d 1104, 1107 (9th Cir. 2004). "The long-prevailing standard of probable cause protects 'citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime,' while giving 'fair leeway for enforcing law in the community's protection.'" Maryland v. Pringle, 540 U.S. 366, 370 (2003) (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)). For purposes of the Fourth Amendment, "[p]robable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." Peng v. Mei Chin Penghu, 335 F.3d 970, 976 (9th Cir. 2003) (quoting United States v. Buckner, 179 F.3d 834, 837 (9th Cir. 1999) (citations and quotations omitted)). "Arresting officers have probable cause to make warrantless arrests if, at the moment of arrest, facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense." United States v. Hillison, 733 F.2d 692, 697 (9th Cir. 1984).

Looking to the circumstances known to Spitzer at the time of Ensign's arrest as alleged in the complaint and construing all inferences in Ensign's favor, this Court finds Ensign sufficiently alleges Spitzer did not have probable cause to arrest Ensign. The motion to dismiss the claim for violation of Ensign's Fourth Amendment rights is DENIED.

### 3. Fourteenth Amendment

Movants argue Spitzer did not violate Ensign's Fourteenth Amendment rights because nothing in the factual allegations demonstrate actions by Spitzer that shocks the conscience. Substantive due process protects from conduct by the government that "shocks the conscience." See United States v. Salerno, 481 U.S. 739, 746 (1987). Intent to inflict harm unrelated to a legitimate law enforcement objective "shocks the conscience" and gives rise to liability. See Porter v. Osborn, 546 F.3d 1131, 1140 (9th Cir. 2008). There are no allegations that Spitzer used any force on Ensign much less that he inflicted harm that shocks the conscience.

Accordingly, Ensign fails to properly allege his First Amendment and Fourteenth Amendment section 1983 claims against Spitzer and they are dismissed. The motion is DENIED as to the section 1983 claim for violation of Ensign's Fourth Amendment rights.

### 4. Qualified Immunity

Defendants argue Spitzer is shielded by qualified immunity. Specifically, Defendants argue there was no constitutional violation as Spitzer did not violate Ensign's First, Fourth or Fourteenth Amendment rights, Ensign did not have a First Amendment right to free speech, and Spitzer had probably cause to arrest Ensign. Defendants' argument in support of their assertion of qualified immunity relies almost entirely on the findings of Judge Kaneshiro in the orders filed in People of the State of California v. Jason Ensign, Superior Court of California, County of San Diego dated May 9, 2011. As discussed above, these documents are outside the pleadings and not subject to judicial notice. As such, the Court will not consider them when addressing Defendants' motion. Accordingly, Defendants fail to demonstrate Spitzer is entitled to qualified immunity.

### III. Second Cause of Action, Monell Claim

Movants argue Plaintiff fails to state a Monell claim against the City of San Diego and Lansdowne. Municipalities, their agencies, and their supervisory personnel may be held liable for deprivations of constitutional rights resulting from their formal policies or customs. See Monell v. New York Dept. Of Social Servs., 436 U.S. 658, 691-93 (1978).

A plaintiff may establish liability pursuant to Monell in one of three ways, (1) demonstrating an employee committed a constitutional violation through a policy, practice or custom of a local governmental entity; (2) showing the employee that committed the constitutional violation "was an official with policy-making authority and that the challenged action itself thus constituted an act of official governmental policy"; or (3) demonstrate "an official with policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996). "In this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom or practice." Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 624 (9th Cir. 1988) (quoting Shah v. County of Los Angeles, 797 F.2d 743, 747 (9th Cir. 1986)).

**A. City of San Diego**

Movants argue the second cause of action fails to state a claim against the City of San Diego, because it consists of conclusory allegations. They specifically argue there are no nonconclusory facts alleging Spitzer, Lansdowne or the City initiated the prosecution against Ensign with malice to support a malicious prosecution claim. Ensign does not specifically address the City in his opposition.

In the third party complaint, Ensign alleges Spitzer was acting under the City's and Lansdowne's "direction and control, knowingly and intentionally promulgated, maintained, applied, enforced, and suffered the continuation of policies, customs, practices and usages in violation of the First, Fourth, and Fourteenth Amendments respectively to the United States Constitution." FATPC ¶ 37. Ensign also alleges the City unlawfully provided Elite personnel with police power when it enacted Municipal Code 59.0202(a)(7). By doing so, Ensign alleges, the City engaged in a custom, policy, practice of violating sports fans' First Amendment rights and retaliating by evicting, battering and arresting them. Id. ¶¶ 12, 13. Ensign further alleges the City engaged in a practice and pattern of violating sports fans' constitutional rights when it unlawfully provided Elite

1  personnel police power by assisting in the enforcement of the Chargers' "Fan Code of
2  Conduct" which is based on the municipal ordinance at issue.  Ensign alleges the City had
3  knowledge the municipal ordinance and "Code of Conduct" were unconstitutionally vague
4  and overbroad and was, therefore, unenforceable but continued to enforce the ordinance
5  and code authorizing officers to assault, batter and wrongfully arrest fans attending
6  Chargers games.  Id.

7  Ensign also alleges the City maintains policies or customs of permitting the kinds
8  of wrongs that he alleges happened to him by its deliberate indifference to police abuses
9  and failing to fairly and impartially investigate, and discipline or prosecute peace officers
10 who commit acts of felonious dishonesty and crimes of violence.  Specifically, Ensign
11 alleges the City had knowledge of repeated allegations of abuse and assaultive misconduct
12 towards Chargers' fans at Qualcomm stadium, but refused to protect the public by failing
13 to discharge and prosecute Spitzer and others.  Id. ¶ 39.  He further alleges the City
14 refused to enforce established administrative procedures to insure the safety of detainees
15 and arrestees, and has a custom and practice of failing to discipline officers and employees
16 who have committed acts of abuse.  Id.  Ensign further alleges the City knew of and
17 sanctioned the practice of falsely arresting, booking and charging victims of abuse by
18 officers with violations of the California Penal Code.  Id.  Ensign also argues the City failed
19 to adequately train and educate officers in the use of reasonable force, failed to enforce the
20 department's written regulations with respect to use of force and failed to adequately
21 supervise the actions of officers under their control.  Id.  Ensign further alleges the City
22 condoned and participated in a practice of prosecuting groundless criminal charges to
23 insulate the City and its officers from civil liability and encouraged a conspiracy of silence
24 among its employees to conceal and further wrongful and illegal conduct by its employees.
25 Id.  Ensign further alleges the City engaged in a custom and practice of refusing to provide
26 public prosecutors and criminal defendants exculpatory and impeaching evidence.  Id.

27 Although not entirely clear, it appears the constitutional violation Ensign asserts is
28 the security personnel's use of the authority provided by the City resulted in the violation

of sports fans' right to freedom of speech and retaliation against a sports fan for engaging in freedom of speech. While this alone is insufficient to allege a <u>Monell</u> claim, Ensign's additional allegations regarding the City's policy and practice are sufficient to allege a <u>Monell</u> claim against the City.

**B. Lansdowne**

Movants argue Ensign fails to state a <u>Monell</u> claim against Lansdowne. They argue Plaintiff alleges Lansdowne failed to engage in an administrative investigation in violation of regulations that require California agencies to deal with citizen's complaints but the third party complaint fails to allege the timely submission of any claim prior to filing the lawsuit. They further argue Ensign's rights were not violated when he was taken into custody because Spitzer had probable cause to arrest him for battery. Movants also argue the third party complaint fails to allege any personal participation by Lansdowne or that Lansdowne knew about the arrest or prosecution or that they were constitutionally deficient in some way.

In opposition, Ensign argues Lansdowne's failure to carry out statutory requirements to investigate the complaint lays personal liability at his feet. Although not entirely clear, Ensign seems to argue Lansdowne's failure to sanction Spitzer for his misconduct ratifies the wrongful acts and subjects Lansdowne to liability.

Ensign's argument that Lansdowne's failure to carry out the investigation appears to suggest Lansdowne himself committed a constitutional violation by not investigating a complaint as required by California. As noted by Movants, there is no allegation that a complaint was filed prior to this lawsuit for Lansdowne to investigate. As such, Ensign fails to allege Lansdowne violated his due process rights.

However, Ensign alleges Spitzer was acting under Lansdowne's direction and control when he engaged in the unconstitutional conduct. Additionally, Ensign alleges Lansdowne engaged in a custom of failing to discipline officers who committed acts of abuse and misconduct. As such, Ensign alleges a <u>Monell</u> claim against Lansdowne. Movants' motion to dismiss the <u>Monell</u> claim is DENIED.

**IV. State Law Causes of Action**

Movants argue the state law causes of action are barred because Ensign failed to comply with the Claims Act. Ensign admits he did not file a government tort claim and "submits on City's request to dismiss City from the pendant state claims." Opposition at 2. Accordingly, to the extent the state law claims are asserted against the Movants, the causes of action are dismissed.

## CONCLUSION AND ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** the City of San Diego, Lansdowne, and Spitzer's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to the First Amendment and Fourteenth Amendment claims against Spitzer. The claims are **dismissed without prejudice**. To the extent the state law claims are asserted against Movants, the motion is **GRANTED** as to the state law claims. The state law claims are **dismissed with prejudice**. The motion is **DENIED** as to the remaining claims.

DATED: March 20, 2013

JOHN A. HOUSTON
United States District Judge