1
2
3
4
5
6
7

8           UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11   CAMERON BAKER,                    )   Civil No. 11-CV-2060-BAS (WVG)
                                       )
12                 Plaintiff,          )   ORDER GRANTING IN PART AND
     v.                                )   DENYING IN PART DEFENDANT
13                                     )   AND CROSS CLAIMANT
     JASON ENSIGN,                     )   ENSIGN'S MOTION TO COMPEL
14                                     )   DISCOVERY PURSUANT TO
                   Defendant.          )   FED.R.CIV.P. 37; DENYING
15   _____)   REQUEST FOR AN ORDER OF
                                       )   CONTEMPT AND MONETARY
16   AND RELATED COUNTER-CLAIM         )   SANCTIONS PURSUANT TO
     AND THIRD PARTY COMPLAINT         )   FED.R.CIV.P. 45 AGAINST
17                                     )   DEPUTY CITY ATTORNEYS
                                       )
18   _____)   [DOC. NO. 102]

19   **I. <u>INTRODUCTION</u>**

20          Pending before the Court is Defendant and Cross-Claimant, Mr. Jason

21   Ensign's (hereinafter "Ensign") Motion to Compel Discovery Pursuant to Federal Rule

22   of Civil Procedure[1] 37, and Request for an Order of Contempt and for Monetary

23   Sanctions Pursuant to Rule 45 Against Deputy City Attorneys Rayna Stephan and Eric

24   Pooch.  (Doc. No. 102.)  For the reasons set forth below, the Court hereby GRANTS

25   IN PART and DENIES IN PART Ensign's Motion to Compel Discovery, and DENIES

26   Ensign's Request for an Order of Contempt and for Monetary Sanctions.

27

28
     _____

     [1] All further references are to the Federal Rules of Civil Procedure.

## A. BACKGROUND

This case involves an incident that occurred on November 29, 2009, at a football game at Qualcomm Stadium. (Doc. No. 84-1 at 2; Doc. No. 102 at 4.) It is alleged that a scuffle ensued after security guards at the game attempted to evict Ensign for displaying an obscene hand gesture. (Doc. No. 84-1 at 2.) The security guards took custody of Ensign and then transferred custody to the San Diego Police Department. Id; Doc. No. 102 at 2. Ensign alleges that he was falsely arrested and battered at Qualcomm stadium by a team of Elite Security guards. Id.

In connection with this incident, Ensign was charged with seven crimes involving battery and vandalism under $400.[2] (Doc. No. 84-1 at 2.) The prosecutors handling the case were Andres Carnahan and Jonathan Lapin. (Doc. No. 102 at 4.) After a bench trial, all counts against Ensign were dismissed. Id. The court determined that the San Diego Municipal Code regulating fan behavior at Qualcomm Stadium was unconstitutionally vague and, hence, unenforceable. Id; Doc. No. 84-1 at 3. Ensign filed a Petition for a Finding of Factual Innocence. (Doc. No. 102 at 4.) City Attorney Jan Goldsmith argued against Ensign's motion. Id. The court found Ensign to be factually innocent. Id.

## B. RELEVANT DATES

On **July 2, 2010**, Plaintiff and Cross-Defendant, Mr. Cameron Baker (hereinafter "Baker"), filed an action in state court against Ensign.[3] (Doc. No. 4-1 at 8.) On **June 2, 2011**, Ensign filed a civil rights Cross-Complaint and a Third Party Complaint against various Third Party Defendants. (Doc. No. 105 at 1.) On **September 6, 2011**, Third Party Defendant City of San Diego (hereinafter "the City") removed the action to this Court. (Doc. No. 4-1 at 8.) On **March 31, 2014**, Ensign

---

[2] The criminal case against Ensign was People v. Ensign, San Diego Superior Court Case No. M099248. (Doc. No. 109 at 2-3.)

[3] Plaintiff's case against Ensign in state court was Cameron Baker v. Jason Ensign, San Diego Superior Court Case No. 37-2010 00095473-CU-PO-CTL.

11CV2060

filed a Second Amended Cross Complaint ("SACC") and Second Amended Third Party Complaint against Third Party Defendants the City, San Diego Police Chief William Landsdowne, and David Spitzer.  (Doc. No. 82.)

On **November 20, 2013**, this Court held a Case Management Conference and set the fact discovery deadline for **May 23, 2014**, and expert discovery deadline for **October 1, 2014**.  (Doc. No. 67 at 2.)  On **April 23, 2014**, Ensign served the City with deposition notices for prosecutors Goldsmith, Lapin, and Carnahan.  (Doc. No. 109-4 at 3.)  On **April 28, 2014**, Ensign served a subpoena duces tecum on the Criminal Division of the San Diego City Attorney's Office, seeking a copy of the People's "entire file" in <u>People v. Ensign</u>, M099248, to be produced by May 6, 2014.  (Doc. No. 102-1 at 2, 4-5; Doc. No. 109 at 2-3.)   Specifically, the subpoena duces tecum requested,

> The *entire file* in possession of the criminal division of the San Diego City Attorney's office including, but not limited to, all police records, investigative reports, witness statements, restitution requests, color photographs, video and audio recordings, notes of interviews with witnesses, medical records, video and/or audio recordings of parties/witnesses, communications in any form to and from prosecutors, communications to and from City Attorney Jan Goldsmith and any member of the Charger's organization, the NFL organization and/or Elite Security during the pendency of the criminal case and through the Motion for Finding of Factual Innocence, communications to and from City Attorney Jan Goldsmith and any member of the prosecution team during the pendency of the criminal case and through the Motion for Finding of Factual Innocence, prosecutor notes of witness interviews, communications in any form to and from prosecutors and any of Baker's civil attorneys, any and all records/files/documentation not provided to the defense of Ensign during the pendency of the criminal case and through the Motion for Finding of Factual Innocence, memoranda pertaining to People v. Ensign, San Diego Superior Court Case No. M099248.  (Doc. No. 102-2 at 4) (emphasis in original).

On **April 29, 2014**, Ms. Stephan sent Ensign's counsel an email objecting to the depositions of prosecutors Goldsmith, Lapin, and Carnahan.  (Doc. No. 102 at 5.) Counsel met and conferred, but it should be noted that Ensign's counsel claims that there were no meaningful meet and confer efforts.  (Doc. No. 102 at 5.)  On **May 6, 2014**, the Court was notified of a discovery dispute in this case regarding the three deposition notices.  (Doc. No. 90 at 1.)  Therefore, on **May 6, 2014**, this Court held a

telephonic Discovery Conference with counsel, at which time Ms. Stephan stated her objections to the depositions on the basis of prosecutorial immunity, that the City attorney was a policy maker, and that since Ensign's counsel had subpoenaed the criminal records from the state case, there was no reason to depose the three prosecutors. Id; Doc. No. 102 at 5.  This Court ordered the parties to file a joint motion about the dispute within forty-eight hours.  (Doc. No. 102 at 5.)

Also on **May 6, 2014**, Ensign's counsel granted the Criminal Division a continuance for the production of the subpoenaed case file until **May 12, 2014**, because the Criminal Division was having difficulty finding the file on the Motion for Finding of Factual Innocence.  (Doc. No. 102 at 5; Doc. No. 109 at 3.)

On **May 7, 2014**, Ms. Stephan was authorized by Mr. Bamberg, Assistant City Attorney in the Civil Division, to contact the Criminal Division for the sole purpose of inquiring whether part of the case file was missing so that Ms. Stephan could accurately assess what objections were available to the  depositions of the prosecutors.  (Doc. No. 109-4 at 3.)  Also on **May 7, 2014**, Ms. Stephan indicated to Mr. Mark Skeels, supervising Deputy City Attorney in the Criminal Division, that the sole purpose of her call was to verify whether the Criminal Division had Ensign's entire case file, as she was dealing with another issue with the Court and the subject had been raised by Ensign's counsel.  Id.

On **May 12, 2014**, this Court denied Ensign's request to take the depositions of the three prosecutors, and ordered the City to produce all records sought by the subpoena duces tecum.  (Doc. No. 90 at 6.)  **May 12, 2014** was also the continued deadline for the Criminal Division to respond to the subpoena duces tecum.  (Doc. No. 102 at 5.)  However, on **May 12, 2014**, the City failed to produce any responsive documents or objections to the subpoena duces tecum.  Id. at 6.

On **May 13, 2014**, after the deadline to respond to the subpoena duces tecum had expired, Ms. Stephan received a voicemail from Mr. Pooch, an attorney in the Criminal Division, who related that the Criminal Division was served with a subpoena for

Ensign's criminal case file and that Ensign's counsel was requesting it from the Criminal Division's Custodian of Records, Ms. Roselyn Aquino.  (Doc. No. 109-4 at 4.)  Mr. Pooch inquired about how the Criminal Division should respond and whether Ms. Stephan actually represented them.  Id.  Ms. Stephan stated that she relayed the message to Mr. Bamberg for a response.  Id.

Also on **May 13, 2014**, Ms. Stephan brought to Mr. Bamberg's attention this Court's Order directing that the criminal case file be produced immediately.  (Doc. No. 109-4 at 4; Doc. No. 90 at 6.)  Ms. Stephan asserts that she told Mr. Bamberg about the Order so that it could be communicated to the Criminal Division for compliance with both the Order and subpoena duces tecum.  (Doc. No. 109-4 at 4.)  On **May 13, 2014**, Ms. Stephan also sent an email to Mr. Pooch with a copy of the Court's Order.  Id.  On **May 14, 2014**, Ms. Stephan had a teleconference with Ms. Marlea Dell'Anno, Assistant City Attorney in the Criminal Division.  (Doc. No. 109-4 at 5.)  Ms. Dell'Anno indicated that there "seemed to be confusion on the part of the Criminal Division about the Civil Division representing them for the subpoena."  Id.

On **May 15, 2014**, Mr. Pooch made a copy of Ensign's criminal case file, and redacted the contents of the prosecutor's trial report and witness telephone numbers. Id. at 3.  On **May 15, 2014**, Mr. Pooch provided Ensign's criminal case file to Ensign's counsel.  Id.  Also on **May 15, 2014**, Mr. Pooch emailed Ensign's counsel and stated that he had produced records per the subpoena, minus the redacted portions.  (Doc. No. 102 at 6.)  Ensign's counsel responded that all objections had been waived.  Id.  Mr. Pooch then stated that the Civil Division had told him that they were objecting, which is why he did not respond to the subpoena in a timely manner.  Id.  Ensign's counsel asserts that Mr. Pooch stated that he was told later that it was he who was supposed to object.  Id.  Ensign's counsel states that she asked Mr. Pooch if Ms. Stephan had issued the directives.  Id.  Ensign's counsel alleges, "*He stated it was, though not directly*." Id; Declaration of Mary Frances Prevost (emphasis in original).

On **May 16, 2014**, Mr. Pooch and Ensign's counsel engaged in informal meet and confer efforts because Ensign's counsel believed the City's production to be insufficient.  (Doc. No. 109 at 3.)  During meet and confer efforts, Mr. Pooch asked Ensign's counsel if she would consider accepting the redacted documents under a protective order.  Counsel agreed, and suggested that the two speak again on the following Tuesday to resolve the issues.  (Doc. No. 102 at 6-7.)

Also, on **May 16, 2014**, Ensign's counsel emailed Mr. Pooch, stating, "If indeed, Rayna Stephan through whatever channels interfered with the subpoena, however, that would not preclude production, but it in my opinion would mitigate against any court sanctions against you for non[-]compliance."  (Doc. No. 109-9 at 3.)  On **May 21, 2014**, Mr. Pooch responded to Ensign's counsel's email, stating, "I reviewed your email and I wanted to take the opportunity to correct one point.  I believe I characterized the issue with the Civil Division as a miscommunication or confusion on our part, not that an attorney 'Interfered'[.]"  Id.

On **May 22, 2014**, Ms. Stephan learned that the Civil Division had a copy of the missing Findings of Factual Innocence folder from the Criminal Division, which had been obtained via a public records request.  (Doc. No. 109 at 3.)  Also on **May 22, 2014**, Ensign filed before the District Judge an *Ex Parte* Motion for Reconsideration and Review of this Court's Ruling denying the request to enforce the deposition subpoenas of the three prosecutors.  (Doc. No. 95.)  As of the date of the filing of this Order, Ensign's *Ex Parte* Motion remains pending.  Id.

Also on **May 22, 2014**, after a series of emails between Ensign's counsel and attorneys for Baker and non-party Elite pertaining to a dispute over subpoenas served on the Chargers and Elite, Ms. Stephan received an email from Ensign's counsel's office notifying her of a teleconference with the Court.  (Doc. No. 109-4 at 5.)  Ms. Stephan claims that there was no mention of any issue pertaining to the production of Ensign's criminal case file.  Id.  Ms. Stephan states that she therefore believed that the

Court's conference was about the disputed subpoenas issued to the Chargers and Elite. Id.

On **May 23, 2014**, Mr. Pooch produced the Finding of Factual Innocence to Ensign's counsel. (Doc. No. 67 at 2; Doc. No. 109 at 4.) On **May 26, 2014**, a disc of documents and a Declaration from Mr. Pooch arrived at Ensign's counsel's office, stating that the "missing" file was held by Ms. Stephen. (Doc. No. 102-1 at 4.)

As of **June 2, 2014**, the date that Ensign filed the instant Motion, Ensign claimed that the City had not yet produced unredacted portions of his criminal file. (Doc. No. 102 at 7.) Ensign also claims that the City has not produced communications to and from City officials and the NFL, the Charger's and Elite personnel, and communications amongst prosecutors, which were part of the request. Id. at 7-8.

### C. **INSTANT DISPUTE**

In his Motion to Compel, Ensign requests that the Court order complete, unredacted copies of all records sought in the subpoena duces tecum that was served on the Criminal Division of the City Attorney's Office on April 28, 2014. (Doc. No. 110 at 4.) Further, Ensign requests that the Court grant him $7,480.00[4] in reasonable attorneys' fees and costs against the City. (Doc. No. 102 at 10.) Ensign also seeks an Order of Contempt against Ms. Stephan and Mr. Pooch. Id. Finally, Ensign requests in his Reply brief that this Court set a hearing for an Order of Contempt for Mr. Bamberg, who Ensign claims instructed Mr. Pooch to disregard this Court's Order to produce Ensign's criminal file. (Doc. No. 110 at 6.)

Finally, during the June 19, 2014, Motion Hearing, Ensign's counsel argued to the Court that Ms. Stephan, Mr. Pooch, and Ms. Aquino had failed to comply with the subpoena that she had served on them to appear at the Hearing to testify, and to bring

---

[4] Ensign's counsel, Ms. Mary Prevost, attached to the Motion to Compel an accounting of her billing in this matter which she requests the Court impose against the City. (Doc. No. 102-1 at 5.)

11CV2060

certain documents to the Hearing.[5/]  Ms. Stephan, Mr. Pooch, and Ms. Aquino were all present at the June 19, 2014, Motion Hearing.  All three individuals produced to the Court responsive documents for an *in camera* review.  After conducting a thorough *in camera* review of all of these documents, the Court concludes that none of the documents in any way contradict the Declarations that were filed in connection with the City's Opposition to the instant Motion, or the arguments made by the City at the Motion Hearing.  In fact, the documents fully support the City's argument that there was legitimate confusion among the attorneys in the Civil and Criminal Divisions regarding the response to the subpoena duces tecum.  For the reasons set forth in Footnote Number Five, the Court will not order any of the documents to be produced to Ensign's counsel.

The City argues that it has produced all discovery that Ensign is entitled to receive.  (Doc. No. 109 at 2.)  The City asserts that because the Criminal Division's tardy discovery response was caused by confusion and was not willful, no sanctions should be imposed.  Id.  It claims that the delay in production of the documents was caused by the Criminal Division's attempt to complete the file, as well as confusion caused in part by the ethical wall maintained by the City Attorney's Office.  Id.

---

[5/] In response to the subpoenas served upon Ms. Stephan, Mr. Pooch, and Ms. Aquino to appear and produce documents at the Hearing, all three individuals brought the subpoenaed documents to the Hearing, but objected to producing them to Ensign's counsel on privilege/work product grounds.  The Court has reviewed all of the communications *in camera* and will not order the communications to be produced.  The Court finds that the communications fall into five general categories: (1) Court documents that have been filed (these documents are not work product, but Ensign has these documents as they are public records); (2) Emails between Ensign's counsel and members of the City Attorney's Office (these documents are not work product, but Ensign's counsel has these emails); (3) Emails internal to the City Attorney's Office that are irrelevant to this matter (these documents are work product and are irrelevant); (4) Emails internal to the City Attorney's Office that discuss the production in response to the subpoena duces tecum (these documents are work product); and (5) Emails internal to the City Attorney's Office that discuss the potential objections to the subpoena duces tecum (these documents are work product).

11CV2060

On June 19, 2014, this Court held a Hearing on Ensign's pending Motion to Compel and Request for an Order of Contempt and Monetary Sanctions.  Ms. Mary Prevost appeared on behalf of Ensign, and Mr. Don Shanahan and Ms. Kathy Steinman appeared on behalf of the City and Ms. Stephan.  Mr. Eric Pooch and Mr. Dan Bamberg were present in the undersigned's courtroom for the Hearing.  Mr. Shanahan informed the Court that neither he, nor Ms. Steinman, represented Mr. Pooch at the Hearing.

After reviewing Ensign's Motion to Compel, the City's Response, Ensign's Reply, and all other relevant documents, as well as conducting an *in camera* review of Ensign's entire criminal case file and all correspondence provided by Ms. Stephan, Mr. Pooch, and Ms. Aquino, and listening to the arguments asserted by all parties at the Hearing, the Court issues the rulings below.

## II. ENSIGN'S MOTION TO COMPEL DISCOVERY

### A. ARGUMENTS

Ensign argues that the City should be compelled to serve responses to the subpoena duces tecum without objections.  (Doc. No. 102 at 8-9.)  Ensign argues that the City has waived objections by failing to provide a timely response.  Id.  Further, Ensign claims that because the City failed to invoke any privilege objections to the subpoena until after the deadline for production, the City defied a direct Court Order.  Id.  Thus, Ensign argues, any objections to the subpoena have been waived.  Id. at 8-9.

The City argues that the information withheld is protected by the work product doctrine.  (Doc. No. 109 at 5.)  The City argues that Ensign seeks the unredacted post-trial report for a trial in which his current counsel participated in all stages, as well as witness telephone numbers that do not seem relevant to Ensign's claims.  Id.  The City contends that Ensign's need for the redacted material is neither substantial nor compelling, and therefore, the work product privilege cannot be overcome.  Id.

The City also contends that, although Ensign argues that disclosure was incomplete because his counsel "knows" that there are electronic communications that have not been disclosed, all electronic communications that are part of Ensign's

11CV2060

criminal case file have been disclosed.  (Doc. No. 109 at 5.)  The City argues that, to the extent that Ensign's counsel demands electronic communications that have not been made part of the case file, they are outside the scope of the subpoena which demanded production of the "entire file."  Id.

## B. LEGAL STANDARD

### 1. FAILURE TO TIMELY OBJECT

Rule 37(a)(3) indicates that "if a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Fed.R.Civ.P. 37(a)(3).  Rule 45(d)(2)(B)(i) allows a party to bring a motion to compel responses where any party fails to respond with objections or incomplete answers to a subpoena issued to produce documents or tangible things. Fed.R.Civ.P. 45(d)(2)(B)(i).

A nonparty served with a subpoena duces tecum may make objections to the subpoena duces tecum within 14 days after service, or before the time for compliance, if less than 14 days.  Fed.R.Civ.P. 45(c)(2)(B). A non-party's failure to timely make objections to a Rule 45 subpoena duces tecum generally requires the court to find that any objection has been waived.  In re DG Acquisition Corp., 151 F.3d 75, 81 (2d Cir. 1998) (privilege against self-incrimination waived by delay); Creative Gifts, Inc. v. UFO, 183 F.R.D. 568, 570 (D.N.M.1998) ("By failing to object within the time permitted by the Federal Rules, [the nonparty] has waived the right to object.  See Wang v. Hsu, 919 F.2d 130 (10th Cir.1990).").

However, in "unusual circumstances and for good cause," the failure to timely act will not bar consideration of objections to a Rule 45 subpoena.  McCoy v. Southwest Airlines Co., Inc., 211 F.R.D. 381, 385 (C.D.Cal. 2002).  "Courts have found unusual circumstances where: (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged the legal basis for the subpoena."  Id.

11CV2060

## 2. PRIVACY INTEREST OF NON-PARTIES

Federal courts recognize a right of privacy that can be raised in response to discovery requests. Hardie v. National Collegiate Athletic Ass'n, 2013 WL 6121885, at 3 (S.D.Cal. Nov. 30, 2013); citing Seattle Times Co. v. Rhinehart, 467 US. 20, 35, n. 21 (1984) (noting that "[a]lthough [Rule 26(b)(2)] contains no specific reference to privacy or other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule"); Breed v. United States Dist. Co. for N. District, 542 F.2d 1114, 1116 (9th Cir. 1976). To evaluate a privacy objection, courts must balance the party's need for the particular information against the privacy right asserted. Breed, 542 F.2d at 1116.

While is it true that the privacy interests at stake in names, addresses, and phone numbers can be distinguished from those more intimate privacy interests such as compelled disclosure of medical records, courts still recognize that third parties have a privacy interest in their personally identifiable information. See Hardie, 2013 WL 6121885, at 3; citing Algee v. Nordstrom, Inc., 2012 WL 1575314, at 4 (N.D.Cal. May 3, 2011) (stating that although third parties "have a legally protected interest in the privacy of their contact information and a reasonable expectation of privacy, the information sought by [the plaintiff] is not particularly sensitive").

## C. DISCUSSION AND RULING

The Criminal Division failed to timely respond to the subpoena duces tecum. The subpoena was served on April 28, 2014, and provided for responses on May 6, 2014. Ensign's counsel granted an extension to May 12, 2014. The record reflects that the Criminal Division did not produce responsive documents until May 15, 2014, and the missing Finding of Factual Innocence folder was not produced until either May 23, 2014, or May 26, 2014. In the May 15, 2014, production, the Criminal Division redacted the entire trial report, which was only three and a half pages out of nearly six hundred pages produced, along with certain witness phone numbers.

11CV2060

The Court does not find good cause to excuse the Criminal Division's untimely objection because the subpoena was not overbroad or outside the bounds of fair discovery.  To the contrary, the subpoena sought relevant information.  Indeed, the Court ordered production of the criminal case file in its May 12, 2014 Order. (Doc. No. 90.)  Despite being aware that the subpoena duces tecum was served upon the Criminal Division, the Criminal Division failed to file a timely written objection, either to the Court or to Ensign's counsel, and opted not to seek timely court intervention by filing a motion to quash, motion for protective order, or request for an *in camera* review.  Rather, the individuals in the Criminal Division appear to have simply discussed the subpoena amongst themselves and somehow missed the deadline to either produce the entire file or assert objections.

The Criminal Division claims that the untimely production was the result of confusion between the Criminal and Civil Divisions as to which Division was responsible for responding to the subpoena duces tecum.  The subpoena duces tecum was served upon the Criminal Division.  It requested a case file that was held and maintained by the Criminal Division.  There should not have been any confusion as to which Division of the City Attorney's Office - Criminal or Civil - was responsible for responding to the subpoena duces tecum.  Further, any confusion that may have been caused by an ethical wall between the two Divisions could have been avoided by a simple phone call or email between the attorneys.  The Court accepts the City's assertion that there is an ethical wall between the two Divisions whose purpose is to prevent one Division from improperly influencing the actions or decisions of the other.  (Doc. No. 109-3 at 3; Exhibit A, Paragraph 4.)  However, the City's own internal procedures clearly permit communications between the Divisions under carefully controlled procedures.  Id.  It is clear from the record that eventually there were in fact communications between the two Divisions about this subpoena.  If that communication had occurred in a timely manner, then perhaps all of this could have been avoided.

Additionally, the Court believes that Ms. Stephan, as attorney of record for the City in this case, had a duty to follow up with the Criminal Division to ensure that it provided a timely response or objections to the subpoena duces tecum.  Simply forwarding to the Criminal Division the Court's May 12, 2014, Order to produce the responsive documents on May 13, 2014, the day after the extended deadline, was not a reasonable or conscientious approach to handling the situation.

As stated above, in unusual circumstances and for good cause shown, the failure to timely act will not bar consideration of objections to a Rule 45 subpoena.  McCoy, 211 F.R.D. at 385.  Here, it appears that any "unusual circumstances" of timely responding to the subpoena duces tecum was one of the Criminal Division's own making.  For the reasons stated above, the Court finds that no good cause exists to excuse the Criminal Division's untimely objection or late production of documents.

The Court notes that all of the information included in the trial report is included in unredacted form in various other places in the case file that was produced to Ensign's counsel on May 15, 2014.  Therefore, even if the Court did not find that the City's objections have been waived as a result of untimely production, Ensign's counsel had already received all of the redacted information in other sections of the case file.  Accordingly, Ensign's Motion to Compel production of the unredacted trial report is GRANTED.

On or before **July 9, 2014**, the Criminal Division of the City Attorney's Office shall produce to Ensign's counsel the complete unredacted trial report.

Further, although the Court finds the Criminal Division's privilege objections to be waived due to its untimely production, it will not order production of the redacted witness phone numbers.  In balancing the non-party witnesses' privacy rights against Ensign's need for the redacted phone numbers, the Court finds that there is a greater interest in maintaining the non-parties' privacy rights in this context.  See Breed, 542 F.2d at1116.  The case file produced to Ensign contains the names and addresses and, in many instances, the business telephone numbers of certain witnesses.  Additionally,

11CV2060

Ensign's counsel was also his counsel in the criminal case.  If Ensign's counsel wants to locate the witnesses, she is free to do so using the information that is already available to her.  Therefore, Ensign's Motion to Compel production of the redacted phone numbers is DENIED.

## III. REQUEST FOR AN ORDER OF CONTEMPT

### A. ARGUMENTS

Ensign asserts that the Court should find both Ms. Stephan and Mr. Pooch in contempt for failing to comply with the May 12, 2014, Order of this Court.  (Doc. No. 102 at 10; Doc. No. 90.)  Specifically, Ensign argues that the City failed to timely file objections to the subpoena, and when the Court ordered the files to be produced, they were produced with redactions.  (Doc. No. 102 at 10.)  Ensign asserts that producing the file with redactions constitutes defiance of a direct Court Order, which calls for an order of contempt as to both Ms. Stephan and Mr. Pooch.[6]  Id. at 9-10.

Further, Ensign claims that Ms. Stephan interfered with the subpoena duces tecum.  (Doc. No. 102 at 8.)  He asserts that, while Ms. Stephan was arguing to this Court that there was no good cause for the deposition of the three prosecutors because Ensign had subpoenaed the criminal case file from the Criminal Division, she was also informing the Criminal Division to object to the production of documents.  Id.  Ensign alleges that when this Court ordered Ms. Stephan to produce the criminal files, she "totally ignored" the Court, even though she had at least one of the requested files in her possession.  Id.

Ensign argues that Mr. Pooch should beheld in contempt pursuant to Rule 45(e).  (Doc. No. 110 at 3.)  Ensign alludes to a conspiracy in the City Attorney's Office, but notes that the existence of a conspiracy does not excuse Mr. Pooch, who had the duty and obligation to object and/or respond to the subpoena duces tecum.  (Doc. No. 110 at 6.)

---

[6] This Court's May 12, 2014, Order Regarding Discovery Dispute is silent as to redactions.  While the Court did not authorize redactions, it did not prohibit redactions. (Doc. No. 90.)

11CV2060

The City argues that the tardy production was the result of confusion within the Civil and Criminal Divisions, and not the result of a conspiracy. (Doc. No. 109 at 4.) It claims that the attorneys representing the People in a criminal case are separated by an ethical wall from the attorneys representing the City of San Diego in a civil case. Id. at 2. The City contends that it appears that such confusion hindered the Criminal This Court's May 12, 2014, Order Regarding Discovery Dispute is silent as to redactions. While the Court did not authorize redactions, it did not prohibit redactions. (Doc. No. 90.) Division's response to Ensign's subpoena duces tecum. Id. The City asserts that, when Mr. Pooch learned that there had been confusion regarding Ms. Stephan's efforts to oppose the subpoena and that the Court had ordered production of the file, he complied with the subpoena, copied the file, redacted privileged material, completed a redaction log, and disclosed the documents to Ensign's counsel. Id.

Further, the City asserts that the subpoena was served on the Criminal Division, and was not issued to Ms. Stephan or the Civil Division. (Doc. No. 109 at 6.) Therefore, the City asserts, Ms. Stephan was not under any summons or orders to comply with the subpoena. Id. The City asserts that Rule 45(g) does not provide for holding in contempt a party or attorney that was not served with the subpoena. (Doc. No. 109 at 9.) Further, the City notes that Ensign's counsel presumably relies upon a conversation with Mr. Pooch, from which Ensign's counsel assumed that Ms. Stephan had interfered with the subpoena duces tecum, but Mr. Pooch responded on May 21, 2014, clarifying that no attorney had interfered. Id. at 10. The City points out that Ensign's counsel received Mr. Pooch's email **before** the Court's Discovery Conference, yet Ensign's counsel nevertheless represented to the Court that Ms. Stephan interfered with the subpoena. Id. The City argues that an assumption or erroneous conclusion by Ensign's counsel, which was directly contradicted by Mr. Pooch, does not rise to clear and convincing evidence of any interference or conduct on the part of Ms. Stephan that would warrant an order of contempt. (Doc. No. 109 at 10.)

11CV2060

Moreover, the City argues, Ms. Stephan did not interfere in any way with the Criminal Division's response to the subpoena duces tecum. (Doc. No. 109 at 6.) When the Court issued its Order that the case file that had been subpoenaed be produced forthwith, the City asserts that Ms. Stephan immediately forwarded the Order to the Criminal Division for handling and compliance, and thereafter reiterated the Court's Order to a supervisor in the Criminal Division. Id. Upon being told by the supervisor in the Criminal Division that they would "handle it," the City claims that Ms. Stephan reasonably assumed they would comply. Id.

The City also provides a Declaration from Mr. Bamberg, stating that the tardy production resulted from confusion or a miscommunication. (Doc. No. 109-2.) Mr. Bamberg also stated that, at no time did Ms. Stephan or Mr. Pooch interfere in the compliance with the subpoena duces tecum. Id. at 3.

## B. LEGAL STANDARD

Rule 45(g) states that the court for the district where compliance with a subpoena is required may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it. Fed.R.Civ.P. 45(g). Rule 37 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules. Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983) (citing Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976)). Rule 37(b)(2)(D) provides for civil contempt instead of, or in addition to, other sanctions. Fed.R.Civ.P. 37(b)(2)(D). Civil contempt is characterized by the court's desire to compel "a party's [ ]obedience to a specific and definite court order [after the party has] fail[ed] to take all reasonable steps within the party's power to comply." Go-Video, Inc. v. Motion Picture Ass'n of America, 10 F.3d 693, 695 (9th Cir. 1993); Gifford v. Heckler, 741 F.2d 263, 265 (9th Cir. 1984). Civil contempt is also characterized "by the court's desire ... to compensate the contemnor's adversary for the injuries which result from the noncompliance." Falstaff Brewing Corp. v. Miller

11CV2060

Brewing Co., 702 F.2d 770, 778 (9th Cir.1983).  The sanction of civil contempt is designed to force the contemnors to comply with an order of the court and thus to affect discovery.  Cunningham v. Hamilton County, Ohio, 527 U.S. 198, 207 (1999).

A party who has failed to comply with an order of the court to produce documents may be found in civil contempt. Fed.R.Civ.P. 37(b)(2)(D); See e.g., Lamar Fin. Corp. v. Adams, 918 F.2d 564, 567 (5th Cir.1990).  "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court."  FTC v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999).  Once the moving party meets this standard, the burden shifts to the contemnor to demonstrate that he or she took every reasonable step to comply, and to articulate reasons why compliance was not possible.  See Donovan v. Mazzola, 716 F.2d 1226, 1240 (9th Cir. 1983).  To assess whether an alleged contemnor has taken "every reasonable step" to comply with the terms of a court order, the district court can consider (1) a history of noncompliance, and (2) a failure to comply despite the pendency of a contempt motion. See Stone v. City and County of San Francisco, 968 F.2d 850, 856–57 (9th Cir. 1992). A party's subjective intent and willfulness is irrelevant.  See McComb v. Jacksonville Paper Co., 336 U.S. 187 (1949); Donovan, 716 F.2d at 1240.  Thus, the disobedient party's good faith or intent in attempting to comply does not bar a finding of contempt. Stone, 968 F.2d at 857.  "Generally, the minimum sanction necessary to obtain compliance is to be imposed."  Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 517 (9th Cir. 1992), citing Spallone v. United States, 493 U.S. at 280.

## C. DISCUSSION AND RULING

As of May 23 or May 26, 2014, Ensign had the entire criminal case file from the Criminal Division, minus the three and a half pages of the redacted trial report, and certain witness phone numbers.  However, as noted above, all of the information included in the trial report is included in unredacted form in other parts of the case file that was produced to Ensign's counsel on May 15, 2014, and other identifying

11CV2060

information about the witnesses is also included in unredacted form in the case file. Thus, Ensign had all of the information responsive to his subpoena, minus certain witness phone numbers, within two weeks of the Criminal Division's deadline to respond. While the Court certainly does not condone untimely discovery, it does not find on the record before it that orders of contempt are warranted.

As discussed above, to assess whether an alleged contemnor has taken every reasonable step to comply with the terms of a court order, the court can consider a history of noncompliance, and a failure to comply despite the pendency of a contempt motion. Stone, 968 F.2d at 856–57. Here, neither Third Party Defendant the City, nor non-party the Criminal Division, has a history of noncompliance with this Court's orders in this or any other case. Further, Ensign's request for an order of contempt makes much of the fact that the case file was produced with redactions, and claims that the redactions violated this Court's May 12, 2014, Order to produce the case file forthwith. While the Court certainly does not believe that full submission of documents (minus the redactions) two weeks after their production was ordered constitutes "forthwith," it also notes that the bulk of production occurred within three days and that its Order was silent as to redactions. Therefore, the Court does not find that the Criminal Division violated this Court's May 12, 2014 Order by redacting the trial report or witness phone numbers. Additionally, the subpoena duces tecum was not served upon Ms. Stephan, and thus, the Court does not find that she violated its Order.

Although the Court does agree with Ensign's counsel that the Criminal Division should have made every effort to provide a timely response to the subpoena duces tecum, it also recognizes that Mr. Pooch did personally deliver the case file, minus the folder for the Finding of Factual Innocence, to Ensign's counsel three days after the deadline. He then made efforts to locate the "missing" folder for the Finding of Factual Innocence and delivered it to Ensign's counsel as soon as it was located, albeit two

11CV2060

weeks after the production deadline.[7]  The Ninth Circuit has stated that, "[g]enerally, the minimum sanction necessary to obtain compliance is to be imposed."  Whittaker Corp., 953 F.2d at 517.  The Court finds that, as of May 26, 2014, the Criminal Division had complied with the Court's Order to produce Ensign's case file.  For all of these reasons, the Court hereby DENIES Ensign's request for an Order of Contempt.[8]

## IV. ENSIGN'S REQUEST FOR MONETARY SANCTIONS

### A. ARGUMENTS

Ensign argues that the Court must impose monetary sanctions against the City under Rule 45.  (Doc. No. 102 at 9-10.)  The City argues that Ensign's request for monetary sanctions is brought only pursuant to Rule 45.  The City argues that monetary sanctions are not available under Rule 45 in this context.  Id.  The City asserts that Rule 45 provides for an award of monetary sanctions regarding a subpoena in a very limited context, specifically protecting a person upon whom a subpoena is served.  Id.

The City argues that Rule 45(d)(1) is clear that monetary sanctions are available only against a party or attorney who issues a subpoena which imposes an undue burden or expense on the responding party.  (Doc. No. 109 at 8.)  It does not provide for

---

[7] It should be emphasized that much of the prosecution file Ensign sought in the subpoena were documents of public record, equally accessible to Ensign as they were to the City.  Moreover, as Ensign's counsel in this case also represented him in the criminal trial earlier, counsel undoubtedly had in her possession much of the non-publicly filed documents.  It appears to the Court that counsel for Ensign was simply engaged in a game of "gotcha" with the City with no real purpose in seeking the subpoenaed materials other than for the City to invest an unnecessary expenditure of time and resources in searching for the prosecutorial file.  Of course, it also has not been overlooked by this Court that counsel for Ensign served the subpoena seeking many documents on April 28, 2014, less than one month from the discovery deadline, and demanding production in a mere eight days initially (May 6, 2014), and then allowing an additional six days to May 12, 2014.

[8] The Court declines to address Ensign's request for the Court to set a hearing for an order of contempt against Mr. Bamberg.  Ensign's only request for this hearing was made in the last sentence of his Reply to the instant Motion.  (Doc. No. 110 at 6.)  The Court has not been presented with any facts or arguments to support setting a hearing for an order of contempt against Mr. Bamberg.

11CV2060

1    monetary sanctions against a party or attorney who fails to comply with, or is late in

2    responding to a subpoena.  Id.  The City claims that nowhere else in Rule 45 is the issue

3    of monetary sanctions discussed, and Plaintiff fails to cite to any other authority which

4    allows for the imposition of sanctions in the context presented here.  Id.

5         The City argues that, even if Rule 45 did provide for monetary sanctions for a

6    failure to comply with a subpoena, or authority for such sanctions was found elsewhere,

7    monetary sanctions are not warranted against Ms. Stephan.  (Doc. No. 109 at 8.)  It

8    argues that the subpoena duces tecum was issued to the Criminal Division, which is

9    located on a separate floor from the Civil Division, and has a separate mailing address,

10   phone number, receptionist, and a separate custodian of records.  Id.  Further, the City

11   argues that Ms. Stephan took all the steps within her control to facilitate compliance by

12   the Criminal Division with the subpoena duces tecum and this Court's Order.  Id. at 9.

13        **B. LEGAL STANDARD**

14        Rule 45(d)(1) states that a party or attorney **responsible for issuing and serving**

15   **a subpoena** must take reasonable steps to avoid imposing undue burden or expense on

16   a person subject to the subpoena.  Fed.R.Civ.P. 45(d)(1).  It further states that the court

17   is required to enforce this duty and impose an appropriate sanction – which may include

18   lost earnings and reasonable attorney's fees – on a party or attorney who fails to

19   comply.  Id.

20        While Ensign moved for monetary sanctions under Rule 45, the Court will

21   briefly address several cases that resulted in different outcomes when parties requested

22   monetary sanctions pursuant to Rule 37.  In Surowiec v. Capital Title Agency, Inc., the

23   court determined that the defendant acted in bad faith by misrepresenting that document

24   searches were ongoing and electronic data was lost during data migration, when it was

25   using only literal search terms and thereby ensuring that no documents would be found,

26   and by identifying no specific responsive document in a "last minute data dump."

27   Surowiec v. Capital Title Agency, Inc., 790 F.Supp.2d 997, 1009-1010 (D.Ariz. May

28   4, 2011).  The court found that monetary sanctions were warranted as the defendant

acted willfully in connection with untimely discovery responses, or lack thereof, to the plaintiff's request for production of documents.  Id.

In Hendrick v. County of Trinity, during a hearing before the court, the parties agreed that the plaintiff would attend her deposition and independent medical examination ("IME") on a certain date.  Hendrick v. County of Trinity, 2010 WL 4823810, at 1 (E.D.Cal. Nov. 22, 2010).  The court ordered both events to occur on the agreed upon date. Id. Despite the parties' agreement and the court's order, the plaintiff failed to appear at either the deposition or IME. Id.  The parties then agreed on a different date for the plaintiff's deposition and IME. Id.  Once again, plaintiff did not appear for either scheduled event. Id.  The plaintiff's counsel agreed that the amount of monetary sanctions requested by the defendants, $7,383.95 in fees and expenses related to both the deposition and IME, was reasonable, and the court imposed the monetary sanction against the plaintiff. Id.

In Chavez v. Blue Sky Natural Beverage Co., the court denied the plaintiff's renewed request for monetary sanctions in the amount of $137,516.67. Chavez v. Blue Sky Natural Beverage Co., 2011 WL 4830997, at 5 (N.D.Cal. Oct. 12, 2011).  The plaintiff argued that the defendants made "inadequate, half-hearted and belated efforts to search for electronic or paper documents." Id. The court had previously ruled on the plaintiff's motion and chose not to order monetary sanctions. Id. at 4.  Instead, the court ordered the defendants to perform additional searches and produce additional documents. Id. In denying the plaintiff's renewed motion, the court found that, in response to its previous orders, the defendants had produced relevant, material documents. Id.

In Agarwal v. Oregon Mut. Ins. Co., the plaintiffs accused the defendant of failing to "fulfill [its] most basic discovery obligations" by not producing several types of documents and producing an unprepared Rule 30(b)(6) deponent. Agarwal v. Oregon Mut. Ins. Co., 2013 WL 211093, at 2 (D.Nev. Jan. 18, 2013).  The plaintiffs requested an order compelling responses to several different categories of discovery

11CV2060

requests, along with monetary sanctions in connection with the discovery motion. <u>Id.</u> In denying the plaintiffs' motion to compel discovery, the court also denied their request for monetary sanctions. <u>Id.</u> at 7. The court determined that the motion did not meet the minimal procedural requirements necessary for consideration, in part because it was an untimely motion, filed after the close of discovery, and the meet and confer efforts appeared to be nothing more than an exchange of terse letters and emails. <u>Id.</u> at 5.

### C. DISCUSSION AND RULING

The City is correct that Ensign requests monetary sanctions against the City pursuant to Rule 45. The City is also correct that Rule 45 allows for the imposition of monetary sanctions against a party or attorney who serves a subpoena, not a party or attorney who responds to a subpoena. Therefore, monetary sanctions against the City are not available under Rule 45.

However, even if Rule 45 did provide for monetary sanctions against the responding party, or if Ensign requested monetary sanctions pursuant to different authority, the Court would not impose an order of monetary sanctions against the City in this context. The Court concludes that the City could have done more to ensure that the April 28, 2014, subpoena duces tecum was answered, or that objections were timely filed. Nonetheless, while the Court is convinced that neither the Civil nor Criminal Divisions were diligent in correcting any confusion regarding the subpoena duces tecum, any dereliction by the City was not willful, in bad faith, or intentional. The Court further recognizes that Ensign's Motion to Compel Discovery, Request for an Order of Contempt, and Request for Monetary Sanctions was filed on June 2, 2014, which was one week **after** Ensign's counsel received **all** responsive documents to the subpoena duces tecum. The only information that Ensign claims he did not receive by May 26, 2014, was the three and a half pages of redacted material in the trial report, and certain witness phone numbers. As discussed above, all of the information in the trial report is included in unredacted form in other parts of the case file. Further, the case

11CV2060

file lists names and addresses of witnesses, although most of the phone numbers, except business numbers, are redacted. Ensign also notes that the Criminal Division did not produce certain communications in response to the subpoena duces tecum. The City contends that all communications included in the case file were produced. The Court agrees with the City that the subpoena duces tecum only requested documents and communications that were included in the case file.

Again, neither the City, nor the Criminal Division of the City Attorney's Office, have a history of late production in this case. The record reflects that there was constant communication about the subpoena between Ensign's counsel and Mr. Pooch. The Court has not been presented with any evidence that the attorneys in the Civil or Criminal Divisions acted in bad faith or intentionally when failing to meet the deadline to respond to the subpoena duces tecum. Therefore, the Court hereby DENIES Ensign's request for monetary sanctions against the City.

## V. CONCLUSION

On or before **July 9, 2014**, the Criminal Division of the City Attorney's Office shall produce to Ensign's counsel the complete unredacted trial report.

IT IS SO ORDERED.

DATED: July 3, 2014

Hon. William V. Gallo
U.S. Magistrate Judge

23

11CV2060