# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON BAKER,<br><br>                     Plaintiff,<br><br>  v.<br><br>JASON ENSIGN,<br><br>                     Defendant.<br><br>AND RELATED COUNTERCLAIM AND THIRD-PARTY COMPLAINT | Case No. 11-cv-2060-BAS(WVG)<br><br>**ORDER:**<br><br>**(1) DENYING MR. ENSIGN'S MOTIONS TO RECONSIDER MAGISTRATE JUDGE'S ORDERS; AND**<br><br>**(2) DENYING MR. ENSIGN'S *EX PARTE* MOTION FOR ORDER SHORTENING TIME**<br><br>**[ECF Nos. 95, 116, 128]** |

      Pursuant to Federal Rule of Civil Procedure 72(a), Defendant/Cross-claimant Jason Ensign challenges three discovery-related orders issued by United States Magistrate Judge William V. Gallo. The orders that Mr. Ensign challenges are dated May 12, 2014, June 20, 2014, and July 3, 2014. Mr. Ensign's challenge to the July 3, 2014 order is included in an *ex parte* motion for an "order shortening time" to file a Rule 72(a) motion. Even though the challenge itself is not pending before the Court, the Court will nonetheless address the merits of the Rule 72(a) challenge to determine whether granting the request to "shorten time" is warranted.

The Court finds these motions suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1). For the following reasons, the Court **DENIES** Mr. Ensign's motions to reconsider the magistrate judge's May 12, 2014 and June 20, 2014 orders, and **DENIES** Mr. Ensign's *ex parte* motion for an order shortening time related to his anticipated Rule 72(a) challenge to the July 3, 2014 order.

## I. BACKGROUND[1]

This case involves an incident that occurred on November 29, 2009 at a football game that took place at Qualcomm Stadium. It is alleged that a scuffle ensued after security guards at the game attempted to evict Mr. Ensign for displaying an obscene hand gesture. The security guards took custody of Mr. Ensign and then transferred custody to the San Diego Police Department. Mr. Ensign alleges that he was falsely arrested and battered at Qualcomm Stadium by a team of private security guards.

In connection with this incident, Mr. Ensign was charged with seven crimes involving battery and vandalism. Andres Carnahan and Jonathan Lapin are the prosecutors who handled the case. After a bench trial, all charges against Mr. Ensign were dismissed. The court determined that the San Diego Municipal Code regulating fan behavior at Qualcomm Stadium was unconstitutionally vague, and thus, unenforceable. Subsequently, Mr. Ensign filed a petition for a finding of factual innocence. City Attorney Jan Goldsmith argued against Mr. Ensign's petition. The court found Mr. Ensign to be factually innocent.

On July 2, 2010, Plaintiff/Cross-defendant Cameron Baker filed an action in state court against Mr. Ensign. Thereafter, Mr. Ensign filed a civil-rights cross-complaint and third-party complaint against various third-party defendants, including the City of San Diego. The City of San Diego removed this action to federal court. On March 31, 2014, Mr. Ensign filed a Second Amended Cross Complaint and Second

---

[1] This brief description of the lawsuit is taken from the magistrate judge's July 3, 2014 order.

Amended Third Party Complaint against Third Party Defendants City of San Diego, San Diego Police Chief William Landsdowne, and David Spitzer (collectively, "City Defendants").

## II. STANDARD OF REVIEW

A party may object to a non-dispositive pretrial order of a magistrate judge within fourteen days after service of the order. *See* Fed. R. Civ. P. 72(a). The magistrate judge's order will be upheld unless it is "clearly erroneous or contrary to law." *Id.*; 28 U.S.C. § 636(b)(1)(A). The "clearly erroneous" standard applies to factual findings and discretionary decisions made in connection with non-dispositive pretrial discovery matters. *F.D.I.C. v. Fid. & Deposit Co. of Md.*, 196 F.R.D. 375, 378 (S.D. Cal. 2000); *Joiner v. Hercules, Inc.*, 169 F.R.D. 695, 697 (S.D. Ga. 1996) (reviewing magistrate judge's order addressing attorney-client issues in discovery for clear error). Review under this standard is "significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. of S. Cal.*, 508 U.S. 602, 623 (1993) (internal quotation marks omitted).

On the other hand, the "contrary to law" standard permits independent review of purely legal determinations by a magistrate judge. *See, e.g.*, *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) ("the phrase 'contrary to law' indicates plenary review as to matters of law."); *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992), *aff'd*, 19 F.3d 1432 (6th Cir. 1994); 12 Charles A. Wright, et al., *Federal Practice and Procedure* § 3069 (2d ed., 2010 update). "Thus, [the district court] must exercise its independent judgment with respect to a magistrate judge's legal conclusions." *Gandee*, 785 F. Supp. at 686. "A decision is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *United States v. Cathcart*, No. C 07-4762 PJH, 2009 WL 1764642, at *2 (N.D. Cal. June 18, 2009).

//

## III. ANALYSIS

### A. Magistrate Judge's May 12, 2014 Order

On May 6, 2014, the magistrate judge was notified of the City Defendants' objections on numerous grounds to deposition notices for City Attorney Goldsmith, Mr. Lapin, and Mr. Carnahan, all of whom are not parties to this action and are not represented by the City of San Diego. Mr. Ensign asserted that the City Defendants did not have standing to challenge the deposition notices, among other things. The City Defendants responded that the attorneys had standing because they are either present or former employees of the City of San Diego, which is a party in this action. Thereafter, the parties submitted a Joint Statement for Determination of Discovery Dispute.

The magistrate judge agreed with the City Defendants, concluding that the they had standing to challenge the deposition notices. In reaching his conclusion, the magistrate judge discussed *Doubleday v. Ruh*, 149 F.R.D. 601 (E.D. Cal. 1993), a case that Mr. Ensign relied heavily on to address standing.

In *Doubleday*, the plaintiff brought a civil action after she was the subject of a criminal prosecution by the Sacramento County District Attorney's Office for assault and battery upon a peace officer. 149 F.R.D. at 604. That case concluded with a not-guilty finding. *Id.* In the subsequent civil action, the plaintiff asserted claims under 42 U.S.C. § 1983 and state-law claims against various officers of the County Sheriff's Department, alleging that the defendants "conspired to use excessive force in arresting [the plaintiff] . . . and that they conspired to coerce the district attorney's office to prosecute her criminally when it was not warranted." *Id.* By subpoena, the plaintiff sought to obtain "the complete prosecutorial file from the criminal case" from the district attorney's office. *Id.* The district attorney's office moved to quash. *Id.* However, the court denied the motion, rejecting the district attorney's office's reliance on the work-product doctrine. *Id.* at 606. Specifically, the court held that the County was not a party to the prior criminal litigation, nor could the County be considered to

be the district attorney's office's client such that the work-product doctrine might apply. *Id.* This is the context in which the court stated that "this court previously ruled that the County had standing to move to quash the depositions of the deputy district attorneys because the County is an employer of those attorneys." *Id.* at 605.

Mr. Ensign attempts to factually distinguish the application of *Doubleday* on two grounds: (1) in *Doubleday*, "the prosecution was on behalf of The People of The State of California, NOT the City attorney"; and (2) "[t]he attorneys representing the party opposing discovery in the Doubleday [sic] case were completely separate from the District Attorney's Office." (Ensign's May 22, 2014 Mot. 7:22–8:8.) These distinctions are irrelevant.

Though Mr. Ensign is correct that the public entity involved in this case differs from the public entity in *Doubleday*, the critical similarity is that both are public entities with both criminal and civil prosecutorial authority. The two public entities—one serving a county, and the other serving a city—are strongly analogous for the purpose of determining whether a non-party has standing to challenge subpoenas or deposition notices when the lawsuit involves parties with the same employer but from different offices. As such, the distinction of who the public entities serve is not relevant.

It is also unclear how whether attorneys are "completely separate" is relevant to determining standing. Mr. Ensign fails to cite any legal authority that discusses "complete separation" as a consideration for determining whether a non-party has standing to object to a subpoena or deposition notice. In addition to providing no legal basis, Mr. Ensign wholly fails to address the impact that current or prior employment with the City of San Diego has on the non-parties' standing to challenge the deposition notices. (*See* May 12, 2014 Order 3:21–4:4.) He does not explain or provide legal authority that demonstrates how the complete-separation requirement relates, assuming there is any relation at all, with *Doubleday*'s proposition that employment status is the important consideration for determining standing. *See Doubleday*, 149 F.R.D. at 605.

1  Without more, the Court cannot conclude that Mr. Ensign's complete-separation
2  requirement is correct or even relevant.
3       Mr. Ensign only invokes the contrary-to-law standard for this motion in arguing
4  the misapplication of *Doubleday*. He does not identify any other relevant law or rule
5  that was arguably not applied or misapplied. For the foregoing reasons, the Court
6  cannot conclude that the magistrate judge failed to apply or misapplied any relevant
7  statutes, case law, or rules of procedure. *See Cathcart*, 2009 WL 1764642, at *2.
8  Therefore, the Court **DENIES** Mr. Ensign's May 22, 2014 motion to set aside the
9  magistrate judge's May 12, 2014 ruling.
10
11     **B.**    **Magistrate Judge's June 20, 2014 Order**
12      On April 28, 2014, Mr. Ensign served a subpoena on non-party Elite Show
13 Services, Inc. ("Elite"). According to Mr. Ensign, Elite's counsel—Robert
14 Crook—provided blanket objections that Elite was unable to respond to the subpoena
15 due to confidential trade secrets.
16      On May 22, 2014, the magistrate judge held a telephonic discovery conference
17 with counsel for all parties, including Elite. During the conference, Elite reiterated its
18 objections on confidentiality grounds, adding that Mr. Ensign's requests were also not
19 relevant and very broad. According to the magistrate judge's order, "Elite's counsel
20 also took issue with Defense counsel serving the subpoena at the last minute, which
21 caused him to have to draft objections at the eleventh hour." (June 20, 2014 Order
22 2:18–26.) The magistrate judge ordered Mr. Ensign and Elite to lodge a *joint* statement
23 by May 30, 2014. Mr. Ensign and Elite, instead, each filed separate statements.
24      In his order, the magistrate judge scolded Mary Prevost—Mr. Ensign's
25 counsel—and Mr. Crook for their failure to comply with the court order to file a joint
26 statement. (June 20, 2014 Order 4:24–5:2.) He eventually concluded that "[w]hether
27 counsel met and conferred or not, they clearly failed to meet and confer <u>in good faith</u>
28 . . . . If good faith meet and confer efforts had occurred, the Court would not be

confronted with ruling on these meritless objections, or these unreasonably and unnecessarily broad discovery requests." (*Id.* at 5:12–18 (emphasis in original).)

Mr. Ensign disagrees with the magistrate judge's conclusion regarding the parties' good-faith meet-and-confer efforts, charging that "the magistrate completely ignored the **fact** that Mr. Crook refused to meet and confer, notwithstanding Prevost's three attempts." (Ensign's June 30, 2014 Mot. 8:25–28 (emphasis in original).) It is unclear what the scope of Mr. Ensign's accusation is, but at the very least, he specifies the declaration of Antoinette Vitale[2] as something ignored by the magistrate judge regarding the May 20, 2014 meet-and-confer attempt. (*Id.* at 4:4–12.) Mr. Ensign takes the position that the "blame [that was laid] equally at the feet both attorneys" was unwarranted "when it was Mr. Crook who dropped frivolous blanket objections on ENSIGN's lawyer, refused to meet and confer, and then lied about it in his certification." (*Id.* at 8:25–28.) These are presumably the facts the magistrate judge allegedly ignored.

Because the challenge to the magistrate judge's finding involves a discretionary decision made in connection with a non-dispositive pretrial discovery matter, the clearly-erroneous standard applies. *See Fid. & Deposit Co. of Md.*, 196 F.R.D. at 378. Upon reviewing the relevant documents—including Mr. Ensign's motion, the attached exhibits, and the magistrate judge's June 20, 2014 order—and taking into account that the clearly-erroneous standard is "significantly deferential," the Court cannot reach a "definite and firm conviction that a mistake has been committed." *See Concrete Pipe & Prods. of Cal.*, 508 U.S. at 623.

There is nothing before Court meeting the clearly-erroneous standard that demonstrates that the magistrate judge did not thoroughly consider the materials that were presented to him. The fact that attempts were made to meet and confer, or even if the parties had successfully met and conferred, does not necessarily lead to the conclusion that such efforts were in good faith. The magistrate judge relies heavily on

---

[2] Ms. Vitale is Ms. Prevost's legal assistant. (Ensign's June 30, 2014 Mot. 4:5–7.)

1 the substance of the arguments presented in addition to the failure of the parties to meet
2 and confer to determine that the parties failed to meet and confer in good faith.

3 More importantly, the magistrate judge, *despite* the parties' failure to adequately
4 comply with a court order, nonetheless considered the merits of the parties' arguments.
5 Mr. Ensign attempts to inaccurately connect the magistrate judge's conclusions
6 regarding the discovery requests to his good-faith finding. However, after the
7 magistrate judge reviewed the parties' discovery requests, he granted some requests
8 and denied others while explaining the reasoning for his conclusions. (*See* June 20,
9 2014 Order 7:18–8:5, Ex. A.) Such a measured approach is not that of a judge who
10 ignores facts before him, but rather a demonstration of his diligence in reaching
11 conclusions supported by law.

12 Therefore, Mr. Ensign's accusations leveled against the magistrate judge are
13 unwarranted and meritless. The Court concludes that the magistrate judge's good-faith
14 finding in the June 20, 2014 order is not clearly erroneous, and even it was, there would
15 be no impact on the magistrate judge's discovery-related findings in the order.
16 Accordingly, the Court **DENIES** Mr. Ensign's motion to set aside the June 20, 2014
17 order.

18

19 **C.  Magistrate Judge's July 3, 2014 Order**

20 On July 22, 2014, Mr. Ensign filed an *ex parte* motion titled "Application for
21 Order Shortening Time to File F.R.C.P. Rule 72 Motion for Re Consideration of
22 Magistrate's Ruling." (ECF No. 128.) Though the wording of the request is not
23 entirely clear, the context suggests that Mr. Ensign is seeking an order to alter the filing
24 deadline for a Rule 72(a) challenge. The ruling that he wishes to challenge is the
25 magistrate judge's July 3, 2014 order. Mr. Ensign attaches the Rule 72(a) motion that
26 he intends to file if he is given leave to do so as Exhibit 2 to the *ex parte* request.

27 The Court will address the relevant issues below.

28 //

### 1. Timeliness

Rule 72(a) provides that "[a] party may serve and file objections to the [magistrate judge's written] order within 14 days after being served with a copy." Though the magistrate judge's order is dated July 3, 2014, it actually was not entered until July 7, 2014. Based on the July 7, 2014 date, the deadline to file any objections to that written order would have been July 21, 2014.

Ms. Prevost attempted to file the Rule 72(a) motion at approximately 11:30 p.m. on July 21, 2014. (Prevost Decl. ¶ 3.) The filing was never transmitted. (*Id.*) Rather, when Ms. Prevost returned the following morning, she received an error message indicating that her files had not been uploaded because a file she attached exceeded the 10 megabyte limit. (*Id.*) Mr. Ensign argues that he is entitled to relief under Rule 60(b) on the basis of his counsel's mistake. (Ensign's *Ex Parte* Mot. 2:3–17.) The Court disagrees.

As the Seventh Circuit eloquently explains

> Electronic filing systems do extend the number of hours available for filing. Instead of having until the clerk's office closes, litigants have until 11:59 PM. But e-filing does not increase the number of *days* available for filing. A document entered into the electronic system at 12:01 AM on a Thursday has been filed on a Thursday, not on "virtual Wednesday." Rule 6(a)(4)(A) is explicit on this point. It says that the last day allowed for filing ends "for electronic filing, at midnight in the court's time zone."
>
> * * *
>
> Courts used to say that a single day's delay can cost a litigant valuable rights. With e-filing, one hour's or even a minute's delay can cost a litigant valuable rights. A prudent litigant or lawyer must allow for difficulties on the filer's end. A crash of the lawyer's computer, or a power outage at 11:50 PM, does not extend the deadline, even though unavailability of the court's computer can do so under Rule 6(a)(3).

*Justice v. Town of Cicero, Ill.*, 682 F.3d 662, 664-65 (7th Cir. 2012) (citation omitted) (emphasis in original).

Similar to the hypothetical late-filing e-filer described in *Justice*, Ms. Prevost attempted to electronically file the Rule 72(a) motion at 11:30 p.m. on the due date.

There was no catastrophic system failure. It appears that Ms. Prevost's computer was in working order, and there is nothing before the Court suggesting that this district's electronic filing system was malfunctioning in any way. Having waited until nearly the last moment to timely file Mr. Ensign's Rule 72(a) challenge, Ms. Prevost chose for whatever unfathomable reason to not simply wait the additional few minutes to ensure that the filing was properly uploaded, transmitted, and confirmed. Rather, mid-upload, Ms. Prevost left her computer and her office to go home. (Prevost Decl. ¶ 3.) That neglect is not excusable.

Additionally, as a practicing attorney in this district, Ms. Prevost is required to familiarize herself with this district's electronic case filing policies. The two documents, both available on this district's website, that Ms. Prevost is responsible to have familiarized her with are: (1) the *Electronic Case Filing Administrative Policies and Procedures Manual* ("ECF Manual"); and (2) the *Electronic Case Filing CM/ECF User's Manual: Including How to File a New Civil Case and How to File Civil Sealed Documents* ("User's Manual"). Both of these documents explicitly instruct numerous times that documents uploaded must not exceed 10 megabytes. (ECF Manual §§ 1(d), 2(k); User's Manual 37, 65, 93.) Based on the conduct described, it appears that Ms. Prevost also failed to diligently and responsibly familiarize herself with this district's electronic case filing policies. This only provides further support for the Court's conclusion that Ms. Prevost's neglect was not excusable, but rather negligent.

For these reasons, the Court finds that Mr. Ensign is not entitled to relief under Rule 60(b). Though that finding is adequate to end this inquiry, the Court will nonetheless address the merits of Mr. Ensign's Rule 72(a) motion.

### 2. Rule 72(a) Motion

This time, Mr. Ensign challenges three conclusions in the magistrate judge's July 3, 2014 order: (1) the decision declining Mr. Ensign's request to continue a hearing so the magistrate judge "could review in camera and produce the written emails to and

from the civil and criminal divisions so that she could properly examine the criminal and civil attorneys to ferret out the truth"; (2) the decision declining "to order the City to produce the redacted identifying information on witnesses to the underlying criminal case"; and (3) the decision to decline "to issue sanctions and an order of contempt against City for its intentional and wilful withholding of clearly non privileged [sic] documents." (Ensign's July 21, 2014 Mot. 5:20–8:12.) All three of these challenges lack merit, and none of them meets either the clearly-erroneous or contrary-to-law standards.

Beginning with the first challenge, Mr. Ensign fails to provide any legal authority that compels the magistrate judge to conduct an *in camera* review of the subpoenaed emails at issue. Additionally, this Court is unable to locate in the July 3, 2014 order any specific order denying a request for an *in camera* review. Mr. Ensign does not direct this Court's attention to any specific portion of the magistrate judge's order that discusses a request for an *in camera* review of these email communications. If these documents were included in the subpoenas served upon Rayna Stephan, Eric Pooch, and Roselyn Aquino, it appears the magistrate judge conducted an *in camera* review of the subpoenaed documents before issuing his order. (*See* July 3, 2014 Order 8 n.5.) Consequently, the Court cannot conclude that the magistrate judge's order is clearly erroneous or contrary to law in any way with respect to this first challenge.

The entirety of Mr. Ensign's next challenge is as follows:

> There was no challenge to Mr. Ensign's proposition that City simply failed to interpose any objections prior to the due date of the subpoenaed documents. There is simply no valid reason not to have ordered production of the redacted witness information in the underlying case. Police officer identifying information aside, there were lay witnesses whose information was redacted that the magistrate declined to order produced. As to any of those redactions, the magistrate judge's issue was contrary to law.

(Ensign's July 21, 2014 Mot. 6:18–26.) Simply put, Mr. Ensign wholly fails to meet his burden of demonstrating that the magistrate judge's order was contrary to law. This challenge is full of conclusory remarks without any meaningful explanation as to why

or how the magistrate judge's decision was contrary to law. Furthermore, Mr. Ensign fails to identify any particular statute, case law, or rules of procedure that the magistrate judge failed to apply or misapplied, as the contrary-to-law standard requires. *See Cathcart*, 2009 WL 1764642, at *2. In fact, Mr. Ensign does not cite any law at all in presenting the aforementioned "argument." Thus, this Court cannot conclude that the magistrate judge's order is contrary to law in any way as to this second challenge.

In the final challenge, Mr. Ensign seeks to compel the magistrate judge to sanction the City and hold it in contempt.[3] "By the very nature of its language, sanctions imposed under Rule 37 must be left to the sound discretion of the trial judge." *O'Connell v. Fernandez-Pol*, 542 F. App'x 546, 547-48 (9th Cir. 2013) (citing *Craig v. Far W. Eng'g Co.*, 265 F.2d 251, 260 (9th Cir. 1959)). Mr. Ensign recognizes as much by stating that "the court should *exercise it's* [sic] *authority* to penalize the misconduct." (*See* Ensign's July 21, 2014 Mot. 8:7–9 (emphasis added).) But yet again, Mr. Ensign fails to provide any legal authority compelling sanctions for the situation described. He also fails to identify any relevant statute, case law, or rules of procedure that the magistrate judge failed to apply or misapplied, as the contrary-to-law standard requires. *See Cathcart*, 2009 WL 1764642, at *2. Needless to say, Mr. Ensign also fails to meet his burden to demonstrate that the magistrate judge's order is contrary to law as to this last challenge.

In sum, upon reviewing Mr. Ensign's anticipated motion and the relevant documents, this Court cannot conclude that any of Mr. Ensign's Rule 72(a) challenges have merit. In other words, Mr. Ensign fails to meet his burden to demonstrate that the magistrate judge's order is either clearly erroneous or contrary to law. Consequently, the Court **DENIES** Mr. Ensign's "application for order shortening time to file F.R.C.P.

---

[3] Mr. Ensign requests "Rule 27 sanctions." (Ensign's July 21, 2014 Mot. 8:10–12.) However, Federal Rule of Civil Procedure 27 does not have a sanctions provision. In fact, the word "sanction" is not used anywhere in the rule. It appears that what Mr. Ensign meant to request were sanctions under Rule 37, which discusses sanctions in great detail.

Rule 72 motion" because granting the request would be futile.

## IV. CONCLUSION & ORDER

Based on the foregoing, the Court **DENIES** Mr. Ensign's motions to reconsider the magistrate judge's May 12, 2014 and June 20, 2014 orders, and **DENIES** Mr. Ensign's *ex parte* motion for an order shortening time related to his Rule 72(a) challenge of the July 3, 2014 order.

Additionally, the Court questions the sincerity of these meritless challenges to the magistrate judge's orders. Moving forward, the parties are directed to this Court's Standing Order for Civil Cases § 14 and Civil Local Rule 83.4 requiring courteous and respectful conduct at all times *in all settings*. The parties—Mr. Ensign in particular—are also advised that "Rule 11 authorizes a court to impose a sanction on any attorney, law firm, or party that brings a claim for an improper purpose or without support in law or evidence." *Sneller v. City of Bainbridge Island*, 606 F.3d 636, 638-39 (9th Cir. 2010); *see also* Fed. R. Civ. P. 11(b)-(c). This Court will impose the appropriate disciplinary sanction if it finds that one is warranted. *See* Civ. L.R. 83.5; Fed. R. Civ. P. 11(c).

**IT IS SO ORDERED.**

**DATED: August 14, 2014**

**Hon. Cynthia Bashant**
**United States District Judge**