1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| CAMERON BAKER, | Case No. 11-cv-2060-BAS(WVG) |
| Plaintiff/Counter-defendant, | **ORDER:** |
| v. | **(1) DENYING MR. ENSIGN'S *EX PARTE* MOTION TO VACATE AND RESET SUMMARY-JUDGMENT MOTION BRIEFING SCHEDULE; AND** |
| JASON ENSIGN, | |
| Defendant/Counter-claimant. | **(2) GRANTING MR. BAKER'S UNOPPOSED MOTION FOR SUMMARY JUDGMENT** |
| AND RELATED COUNTERCLAIM AND THIRD-PARTY COMPLAINT | **[ECF Nos. 101, 136]** |

11
12
13
14
15
16
17
18
19
20
21

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff/Counter-defendant

22 Cameron Baker moves for summary judgment.  Defendant/Counter-claimant Jason

23 Ensign was ordered to file an opposition no later than July 14, 2014.  On July 18, 2014,

24 Mr. Baker filed a notice of non-opposition, notifying the Court that Mr. Ensign failed

25 to file a timely opposition.   Instead of filing an actual opposition, on July 28,

26 2014—fourteen days after the opposition was due—Mr. Ensign filed an *ex parte*

27 motion to continue the briefing schedule for the summary-judgment motion.

28 //

1  The Court finds these motions suitable for determination on the papers submitted
2  and without oral argument.  *See* Civ. L.R. 7.1(d.1).  For the following reasons, the
3  Court **DENIES** Mr. Ensign's *ex parte* motion, and **GRANTS** Mr. Baker's summary-
4  judgment motion.

5

6  ## I.    BACKGROUND[1]

7  This case arises from an incident that occurred on November 29, 2009 at a
8  football game that took place at Qualcomm Stadium.  (Baker Decl. ¶ 2.)  At that time,
9  Mr. Baker was an employee of Elite Show Services, Inc., which had been hired by the
10 San Diego Chargers to provide private security services at their football games.  (*Id.*
11 ¶ 1.)  Mr. Baker was a private security officer who provided security services at the San
12 Diego Chargers football games at Qualcomm Stadium.  (*Id.*)

13 On November 29, 2009, Mr. Baker and his partner were directed by radio to
14 respond to "a white male fan who was reportedly being unruly and disruptive."  (Baker
15 Decl. ¶ 2.)  When they arrived at the scene, Mr. Baker "saw a white male, who [he]
16 later learned was Mr. Ensign[,]" who "was standing up on the stairway and was
17 belligerently waving his middle finger in a 'fuck you' gesture at other spectators[.]"
18 (*Id.*; *see also* RFA Nos. 3–4, 7–8.)  Mr. Ensign admits that he ingested alcohol prior
19 to and during the football game.  (RFA Nos. 5–6.)  Mr. Baker approached Mr. Ensign
20 and "asked him to follow [them] into the hallway of the stadium."  (Baker Decl. ¶ 2.)
21 According to Mr. Baker, that was "standard procedure" because any interaction
22 between Mr. Ensign and the security officers standing in front of other spectators
23 would obstruct their view of the game.  (*Id.*)

24

---

25 [1] According to Mr. Baker, because Mr. Ensign failed to respond to the Requests for Admission
   (Set One) ("RFA"), those requests are deemed admitted under Federal Rule of Civil Procedure
26 36(a)(3).  Rule 36(a)(3) provides that "[a] matter is admitted unless, within 30 days after being served,
   the party to whom the request is directed serves on the requesting party a written answer or objection
27 addressed to the matter and signed by the party or its attorney."  Mr. Baker includes a declaration from
   his counsel that such requests were served on November 26, 2013 and never responded to in addition
28 to a proof of service for the RFAs.  (Crook Decl. ¶¶ 4–10; Baker's Mot. Ex. 5.)  Therefore, the matters
   in the RFAs are deemed admitted.  *See* Fed. R. Civ. P. 36(a)(3).

Mr. Ensign was not compliant.  (*See* Baker Decl. ¶ 3.)  Instead, he "grabbed onto a handrail and shouted 'Fuck you!  I'm not going anywhere!'"  (Baker Decl. ¶ 3; *see also* RFA Nos. 11–12.)  At that point, Mr. Baker and two of his colleagues "tried to remove Mr. Ensign's hands from the handrail."  (Baker Decl. ¶ 3.)  As Mr. Baker removed one hand, "Mr. Ensign pulled it away from [Mr. Baker's] grip and punched [him] in the face."  (*Id.*; *see also* RFA No. 14.)

Eventually, Mr. Baker and his colleagues removed Mr. Ensign into the hallway of the stadium where "Mr. Ensign continued to utter obscenities and make threats towards security officers."  (Baker Decl. ¶ 5; *see also* RFA Nos. 10, 15–21.)  The security officers, including Mr. Baker, "tried to restrain [Mr. Ensign] with as little force necessary, but he continued to resist."  (Baker Decl. ¶ 5.)  They "continued to ask [Mr. Ensign] to comply with [their] requests, but Mr. Ensign continued to disobey security officer directives."  (*Id.*)

Mr. Ensign was subsequently taken into custody by the San Diego Police Department.  (Baker Decl. ¶ 5.)  Mr. Baker answered questions from law enforcement and officials with the City of San Diego, including the San Diego Police Department and the City Attorney's Office.  (*Id.* ¶ 12.)  He also participated in the criminal proceedings against Mr. Ensign.  (*Id.*)  Mr. Baker also declares under penalty of perjury that he "never stated [he] would file a civil lawsuit against [Mr. Ensign], unless he pleaded guilty to criminal charges and paid [Mr. Baker] some $40,000 in damages."  (*Id.*)

Sometime thereafter, Mr. Baker commenced a lawsuit against Mr. Ensign in the San Diego Superior Court.  The complaint for that action was not provided to this Court.  On June 24, 2011, Mr. Ensign filed a cross complaint and third-party complaint against Mr. Baker, Elite Show Services, Inc. ("Elite") and several of Elite's employees, and the City of San Diego and several of the city's officials ("City Defendants").[2]  On

---

[2] On January 8, 2014, Elite, Parham Hirari, Tyler Wenbourne, Matthew Keasler, Joel Brase, and Jason Biggers were dismissed as defendants from Mr. Ensign's action.  (ECF No. 70.)

September 6, 2011, the City Defendants removed the cross complaint and third-party complaint to federal court.

On December 6, 2011, Mr. Ensign filed a First Amended Cross Complaint and First Amended Third Party Complaint for Damages ("FACC"), asserting eight causes of action: (1) violation of civil rights under 42 U.S.C. § 1983 for excessive force, false arrest, "First Amendment violation," and "retaliation for exercising First Amendment rights"; (2) unlawful custom and practice under § 1983, also referred to as a *Monell* claim; (3) violation of the California Civil Rights Act; (4) malicious prosecution; (5) assault and battery; (6) false arrest; (7) intentional infliction of emotional distress; (8) negligence; and (9) negligent employment / retention / supervision.  (ECF No. 24.) Every cause of action is asserted against Mr. Baker except for the second cause of action for unlawful custom and practice, and the ninth cause of action for negligent employment / retention / supervision.

Mr. Baker now moves for summary judgment for all causes of action asserted against him.  The Court issued a briefing schedule requiring any opposition to the summary-judgment motion to be filed no later than July 14, 2014, and any reply to be filed no later than July 21, 2014.  Mr. Ensign failed to file an opposition or request additional time by the due date.  On July 18, 2014, Mr. Baker filed a notice of non-opposition after Mr. Ensign failed to timely file his opposition.  About fourteen days after the opposition was due, Mr. Ensign filed an *ex parte* motion to continue the briefing schedule instead of an opposition brief.  Mr. Baker and the City Defendants oppose that *ex parte* motion.

## II.   LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law,

it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 242, 252). Rather, the

nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

A district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition. *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994). The court may, however, grant an unopposed motion for summary judgment if the moving party's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact. *See Carmen*, 237 F.3d at 1029.

## III.   DISCUSSION

As a preliminary matter, the Court will first address Mr. Ensign's *ex parte* motion to continue the briefing schedule for Mr. Baker's summary-judgment motion. Thereafter, the Court will assess Mr. Baker's moving papers to ensure that they are sufficient to support his summary-judgment motion and do not on their face reveal a genuine issue of material fact. *See Carmen*, 237 F.3d at 1029.

### A.   Mr. Ensign's *Ex Parte* Motion to Continue Briefing Schedule

Following his failure to oppose Mr. Baker's summary-judgment motion, Mr. Ensign filed an *ex parte* motion seeking a continuance of the motion's briefing schedule under Federal Rule of Civil Procedure 60(b)(1). He provides the following argument to justify the relief sought:

1
2
3
4
5
6
7

> The cause, in part here, was because of the delaying tactics of Plaintiff's counsel and counsel for City of San Diego who each objected to discovery that was substantially overruled by the Magistrate Judge. But for that, Mr. Ensign's counsel would not have been forced to file three motions to compel, appear in court, and subsequently file three F.R.C.P. Rule 72(a) [sic] petitions to this court to resolve the remaining issues.
>
> The specifics of the unnecessary but tedious and oppressive discovery disputes is [sic] more fully set out in the accompanying declaration of counsel [Mary Prevost].

(Ensign's *Ex Parte* Mot. 4:21–5:1.)

8   Ms. Prevost's declaration mostly describes her work schedule—including
9   preparing discovery requests, objections, and motions as well as at least one "lengthy
10  court appearance"—and how voluminous it was particularly in light of an "ADA
11  qualifying illness." (Prevost Decl. ¶¶ 3–10.) She does not describe her "ADA
12  qualifying illness" in any detail. Ms. Prevost also contends that the volume of her case
13  load even required her to withdraw and associate outside counsel in an unrelated case
14  in federal court. (*Id.* ¶ 10.) Ms. Prevost summarizes her plight as follows:

15
16
17
18
19

> But for the huge amount of unnecessary work required as a result of legally untenable objections to basic discovery by opposing counsels requiring multiple motions and multiple appeals, coupled with having to re-enter a case I originally withdrew from because of health reasons and pull several "all nighters" against my doctor's orders to protect a client whose attorney became unable to file his opposition to a motion for summary judgment, I would have been able to either oppose the pending MSJ or seek a continuance until the never-ending discovery disputes are resolves [sic].

20  (*Id.* ¶ 12.) She also adds that she sought stipulations to continue "the motions" by all
21  opposing counsel, but each declined her request. (*Id.* ¶ 13.) To simplify Ms. Prevost's
22  explanation, she did not prepare or file an opposition brief to Mr. Baker's motion
23  because she had too much work, and lays blame on opposing counsel in large part for
24  creating that voluminous work.

25  Rule 60(b) provides a vehicle for a party to seek relief from a final judgment,
26  order, or proceeding. It is for extraordinary relief and may be invoked only upon a
27  showing of exceptional circumstances. *Engleson v. Burlington N.R. Co.*, 972 F.2d
28  1038, 1044 (9th Cir. 1994) (citing *Ben Sager Chem. Int'l v. E. Targosz & Co.*, 560 F.2d

805, 809 (7th Cir. 1977)).  Under Rule 60(b), the court may grant reconsideration based on: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered before the court's decision; (3) fraud by the adverse party; (4) the judgment is void; (5) the judgment has been satisfied; or (6) any other reason justifying relief.  Fed. R. Civ. P. 60(b).  That last prong is "used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir. 2007).  A final judgment, order, or proceeding has not yet occurred in this action.  Consequently, Rule 60(b) is not the appropriate rule to apply to Mr. Ensign's *ex parte* request.  Rather, Rule 6(b) is the appropriate rule for seeking extensions of time under these circumstances.  *See Gurvey v. Legend Films, Inc.*, No. 09-cv-942, 2012 WL 4061773, at *5 (S.D. Cal. Sept. 14, 2012) (Battaglia, J.).

Rule 6(b) states that "[w]hen an act may or must be done within a specified time, the court may, for good cause extend the time . . . with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires." Fed. R. Civ. P. 6(b)(1)(A).  "Once the time has expired, a noticed motion for relief, based on a showing of excusable neglect, is required." *Gurvey*, 2012 WL 4061773, at *5 (citing Fed. R. Civ. P. 6(b)(1)(B)).

The Ninth Circuit has held that, for purposes of Rule 6(b), "excusable neglect" must be judged by the standard set forth in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993).  *See Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (citing *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 825 n.4 (9th Cir. 1996)) ("[T]his court [has] held that the Supreme Court's analysis of 'excusable' neglect in *Pioneer* is applicable to Rule 6(b)[.]").  Under *Pioneer*, a "determination of whether neglect is excusable is an equitable one that depends on at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings;

(3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223-24 (9th Cir. 2000) (citing *Pioneer*, 507 U.S. at 395).

With the four-factor *Pioneer* test in mind, courts have held that "tactical decisions do not amount to affirmative showings of excusable neglect under Rule 6(b)." *African Am. Voting Rights Legal Defense Fund, Inc. v. Villa*, 54 F.3d 1345, 1350 (8th Cir. 1995); *see also Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1519 (10th Cir. 1990) (characterizing failure to timely file counterclaim as tactical, and thus not due to excusable neglect). The Ninth Circuit has also determined that counsel's "mistake in interpreting and applying" the rules does not constitute excusable neglect. *Kyle v. Campbell Soup Co.*, 28 F.3d 928, 931 (9th Cir. 1994); *Tarrer v. Pierce Cnty.*, No. C10-5670BHS, 2011 WL 5864686, at *2 (W.D. Wash. Nov. 22, 2011) (under Rule 6(b), "[w]here counsel's inadvertence or oversight is the only reason shown to excuse an untimely demand for a jury trial, there is no basis upon which the Court may grant relief"). Additionally, a "deliberate decision" is "not excusable neglect." *Level 3 Commc'ns, Inc. v. Lidco Imperial Valley, Inc.*, No. 11cv01258, 2012 WL 4848929, at *8 (S.D. Cal. Oct. 11, 2012). But "[i]n the end, this is a decision committed to the discretion of the district court." *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 974 (9th Cir. 2007).

Between the time when Mr. Baker filed his summary-judgment motion on May 30, 2014 and the due date for Mr. Ensign's opposition on July 14, 2014, Ms. Prevost made six filings: (1) on June 2, 2014, she filed a motion to compel discovery concurrently with a motion for sanctions (ECF No. 102); (2) on June 13, 2014, she filed a reply brief in support of her motion to compel (ECF No. 110); (3) on June 30, 2014, she filed a reply brief in support of her *ex parte* motion challenging an order issued by the magistrate judge (ECF No. 115); (4) on June 30, 2014, she filed an *ex parte* motion challenging a different order issued by the magistrate judge (ECF No. 116); (5) on July 3, 2014, she filed a motion to strike the City Defendants' affirmative defenses (ECF

No. 116); and (6) on July 3, 2014, she filed another motion to strike Mr. Baker's affirmative defenses (ECF No. 117). After the opposition deadline, on July 22, 2014, Ms. Prevost filed another challenge to an order issued by the magistrate judge. It was not until July 28, 2014, fourteen days after the opposition deadline passed, that the failure to file an opposition was even addressed. These events do not demonstrate excusable neglect. Rather, they demonstrate that Ms. Prevost made the deliberate and tactical decision to proceed with her other filings while fully capable of practicing law in lieu of preparing Mr. Ensign's opposition to the summary-judgment motion. (*See* Ensign's *Ex Parte* Mot. 4:25–27.) When she was presented with that choice, Ms. Prevost chose not to file an opposition in order to prepare and file other briefs.

This Court is mindful that when applying *Pioneer*, the impact on the proceedings is the primary concern because of the policy favoring disposition on the merits. However, this concern can be mitigated as this Court has reviewed the moving party's papers to ensure they are sufficient to support the motion and there is no genuine issue of material fact. *See Carmen*, 237 F.3d at 1029. Also, the evidence relevant to assessing the merits of Mr. Baker's summary-judgment motion rely largely on Mr. Ensign's admissions that resulted from his failure—or his counsel's—to respond to Mr. Baker's RFAs. *See* Fed. R. Civ. P. 36(a)(3). Consequently, impact on the proceedings does not necessarily militate in Mr. Ensign's favor.

The length of and reason for the delay each disfavor finding that Ms. Prevost's neglect was excusable. A fourteen-day delay before requesting the continuance is a substantial amount of time relative to this district's Twenty-Eight Day Rule setting the briefing schedule for all noticed motions. *See* Civ. L.R. 7.1(e)(1). And Ms. Prevost's explanation that her voluminous workload precluded her from preparing and filing an opposition completely lacks merit in light of her clear ability to prepare and file other briefs leading up to the opposition's deadline.

Finally, there is serious doubt regarding whether Ms. Prevost acted in good faith. She has a created a pattern of failing to meet required deadlines and follow court orders

in this case.  The magistrate judge previously admonished Ms. Prevost as well as opposing counsel for their failure to meet and confer in good faith, and this Court also admonished Ms. Prevost for filing spurious and meritless motions.  All things considered, this Court cannot conclude that Mr. Ensign and his counsel acted in good faith.

In sum, the circumstances that Mr. Ensign and his counsel Ms. Prevost present fail to demonstrate excusable neglect under Rule 6(b)(1)(B).  *See Pioneer*, 507 U.S. at 395; *Villa*, 54 F.3d at 1350; *Level 3 Commc'ns*, 2012 WL 4848929, at *8.  The decision to not prepare and file an opposition to Mr. Ensign's summary-judgment motion while Ms. Prevost was apparently fully capable of engaging in the practice of law was deliberate and tactical, and the *Pioneer* factors also disfavor an excusable-neglect finding.  *See id.*  Accordingly, the Court **DENIES** Mr. Ensign's *ex parte* motion to continue the summary-judgment motion's briefing schedule.  *See* Fed. R. Civ. P. 6(b). Consequently, Mr. Baker's summary-judgment motion is effectively unopposed.

## B.    42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  *West v. Atkins*, 487 U.S. 42, 28 (1988).  Section 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted).  Indeed, "private parties are not generally acting under color of state law."  *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991).  "When addressing whether a private party acted under color of state law, [courts] start with the presumption that the private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) (citing *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) ("Only in rare circumstances can a

private party be viewed as a 'state actor' for section 1983 purposes.")).

There is no evidence before this Court that Mr. Baker was acting under color of state law. He was not employed by a government entity or enforcing any California statute. Any suggestion to the contrary would necessarily mean that his employer, Elite, would also have to have been somehow acting under color of state law. However, Mr. Ensign describes Elite in his complaint as "a corporation licensed and registered to do and doing business in San Diego County, California" and "the security company responsible for providing security for the football games," which only affirms that Elite and, by extension, Mr. Baker were not state actors. (*See* Ensign's FACC ¶ 5.) Consequently, the presumption that Mr. Baker's private conduct does not constitute governmental action has not been rebutted. *See Sutton*, 949 F.3d at 1130. Therefore, the Court **GRANTS** Mr. Baker's summary-judgment motion as to the § 1983 cause of action.

### C.    California Civil Code § 52.1

California Civil Code § 52.1 permits an individual to bring a civil action for interference with his rights under the United States or California Constitutions by threats, intimidation, or coercion. *Venegas v. Cnty. of Los Angeles*, 153 Cal. App. 4th 1230, 1239 (2007).  The elements of a cause of action under § 52.1 are: (1) that the defendant interfered with, or attempted to interfere with, the plaintiff's statutory or constitutional rights through violence or threat of violence; (2) that the plaintiff reasonably believed that if he exercised his constitutional rights, he would be met with violence against his person or property; (3) that the plaintiff was harmed; and (4) that the defendant's conduct was a substantial factor in causing the plaintiff's harm. *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 882 (2007); *see also Jones v. Kmart Corp.*, 17 Cal. 4th 329, 333 n.1 (1998) (the elements of a claim under California Civil Code § 52.1 are essentially identical to a claim under 42 U.S.C. § 1983).

Though there is evidence before the Court that some force was applied to Mr. Ensign by Mr. Baker and his colleagues, there is no evidence that they did so in an attempt to interfere with any of Mr. Ensign's statutory or constitutional rights through violence or threat of violence. Rather, in an effort to defuse an escalating hostile situation where Mr. Ensign was antagonizing other spectators using profanities and obscene gestures, Mr. Baker and his colleagues asked Mr. Ensign to follow them into the hallway according to their standard procedures. That was the initial point of contact. However, Mr. Ensign defiantly responded by directing profanities at the security officers, refusing to leave by latching on to a rail, and then punching Mr. Baker in the face. That incident does not suggest any effort to deprive Mr. Ensign of any statutory or constitutional rights that he arguably had the right to exercise. Thus, the Court **GRANTS** Mr. Baker's summary-judgment motion as to the § 52.1 cause of action.

### D.    Malicious Prosecution

"[I]n order to establish a cause of action for malicious prosecution[,] a plaintiff must plead and prove that the prior proceeding, commenced by or at the direction of the malicious prosecution defendant, was (1) pursued to a legal termination favorable to the plaintiff; (2) brought without probable cause; and (3) initiated with malice." *Villa v. Cole*, 4 Cal. App. 4th 1327, 1335 (1992) (citing *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 871-72 (1989)). "[M]alice means actuated by a wrongful motive, i.e., the party must have had in mind some evil or sinister purpose." *Centers v. Dollar Mkts.*, 99 Cal. App. 2d 534, 541 (1950). "It is sufficient if it appear[s] that the former suit was commenced in bad faith to vex, annoy or wrong the adverse party." *Id.*

"[U]nder California tort law, the indictment itself create[s] a *prima facie* presumption 'that probable cause existed for the underlying prosecution.'" *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1166 (9th Cir. 2011) (quoting *Conrad v. United States*,

447 F.3d 760, 768 (9th Cir. 2006)).  "Although the presumption may be rebutted if the indictment was based on false evidence." *Id.* (citing *Williams v. Hartford Ins. Co.*, 147 Cal. App. 3d 893, 900 (1983)).

Once again, there is no evidence before this Court to support Mr. Ensign's cause of action for malicious prosecution.  To the contrary, Mr. Baker provides undisputed evidence that he never threatened to file a lawsuit if Mr. Ensign did not plead guilty to criminal charges and pay $40,000 in damages, and that his jaw was injured when Mr. Ensign punched him.  There is nothing before the Court that the assertion regarding Mr. Baker's jaw injury resulting from Mr. Ensign's punch was fabricated in any way. Presumably, that act served as the basis for Mr. Baker's state-court action. Consequently, the Court cannot conclude that Mr. Baker initiated his lawsuit without probable cause, or that it was initiated with malice.  *See Villa*, 4 Cal. App. 4th at 1335. Therefore, the Court **GRANTS** Mr. Baker's summary-judgment motion as to the malicious-prosecution cause of action.

## E.   Assault and Battery

Assault is the "unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007); *see also Yun Hee so v. Sook Ja Shin*, 212 Cal. App. 4th 652, 669 (2013). "A battery is any willful and unlawful use of force or violence upon the person of another."  Cal. Penal Code § 242; *see also Brown v. Ransweiler*, 171 Cal. App. 4th 516, 526 (2009).  The question that Mr. Baker presents is whether he had the lawful authority to apply force.  The Court concludes that at the time of the incident, he did.

In *People v. Crowder*, 136 Cal. App. 841, 844 (1982), a private security guard arrested and removed a prescription from the appellant's pocket after a pharmacist confirmed that the appellant was not who he identified himself to be.  The court noted that the security guard "was not acting as a police officer, but as a private security guard." *Id.*  It explained that

1

2

3

> Store detectives and security guards are retained primarily to protect their employer's interest in property. They have no more powers to enforce the law than other private persons. Like all private persons, security employees can arrest or detain an offender and search for weapons before taking the offender to a magistrate or delivering him to a peace officer.

4   *Id.* (quoting *People v. Zelinski*, 24 Cal. 3d 357, 362 (1979)) (citations and internal

5   quotation marks omitted). In mentioning a security employees' authority to arrest or

6   detain, the court referenced California Penal Code § 837, which permits a private

7   citizen to arrest another "[f]or a public offense committed or attempted in his

8   presence."

9           Though the circumstances differ somewhat from *Crowder*, the applicable

10   underlying principle remains the same—that a private security guard has the right to

11   arrest or detain, and by extension, apply a reasonable amount of force to effectuate any

12   lawful arrest or detention, when a public offense is committed in his presence. *See* Cal.

13   Penal Code § 837. The undisputed evidence shows that Mr. Baker and his colleagues

14   approached Mr. Ensign after receiving a report and having seen that he was using

15   profanities and obscene gestures towards other spectators, and asked him to follow

16   them into the hallway. Rather than complying, Mr. Ensign responded belligerently and

17   defiantly uttering profanities at Mr. Baker and his colleagues.

18           At the time, San Diego Municipal Code § 59.0202(a)(7) prohibited any person

19   at a sports facility from "[b]ehaving in so noisy, boisterous, or rowdy a manner as to

20   disturb spectators or participants at any *event*."[3]  (Baker's Mot. Ex. 2.) The ordinance

21   expressly declares such conduct unlawful. (*Id.*) Viewing the undisputed evidence in

22   favor of the non-moving party, the evidence before this Court demonstrates that Mr.

23   Baker—in his capacity as a private security guard and having observed Mr. Ensign

24   committing a public offense in violation of § 59.0202(a)(7) in his presence—was

25   within his authority to arrest or detain Mr. Ensign under § 837, and applied a

26

27           [3] Though the ordinance remains on the City's website, various documents filed with the Court indicate that the ordinance was ultimately struck down on constitutional grounds. That result is apparently what precipitated the dropping of criminal charges against Mr. Ensign.

28

1    reasonable amount of force to effectuate that arrest or detainment. *See People v. Nihell*,

2    144 Cal. 200, 202 (1904) (ruling that an arrest of an individual who was "loudly

3    cursing and swearing" and "breaking [] the peace" by a night watchman was

4    "altogether lawful and proper"); *People v. Carter*, 130 Cal. App. 3d 690, 692 (1982)

5    (acknowledging the authorization to arrest and "privilege to use necessary force" under

6    § 837). Accordingly, the Court **GRANTS** Mr. Baker's summary-judgment motion as

7    to the assault-and-battery cause of action.

8

9               **F.    Intentional Infliction of Emotional Distress**

10              There are three elements to state a claim for intentional infliction of emotional

11   distress: "(1) extreme and outrageous conduct by the defendant with the intention of

12   causing, or reckless disregard of the probability of causing, emotional distress; (2) the

13   plaintiff's suffering severe or extreme emotional distress; (3) and actual and proximate

14   causation of the emotional distress by the defendant's outrageous conduct." *Cervantez*

15   *v. J.C. Penney Co.*, 24 Cal. 3d 579, 593 (1979), *superseded by statute on other grounds*

16   *as stated in Melendez v. City of Los Angeles*, 63 Cal. App. 4th 1, 7 (1998). The

17   defendant's extreme and outrageous conduct must "exceed all bounds of that usually

18   tolerated in a civilized community." *McDaniel v. Gile*, 230 Cal. App. 3d 363, 372

19   (1991).

20              There is no evidence before this Court that Mr. Baker's conduct was extreme and

21   outrageous, "exceed[ing] all bounds of that usually tolerated in a civilized community."

22   *See McDaniel*, 230 Cal. App. 3d at 372. To the contrary, the undisputed evidence

23   before the Court demonstrates that Mr. Baker and his colleagues acted reasonably

24   under the circumstances. *See Nihell*, 144 Cal. at 202; *Carter*, 130 Cal. App. 3d at 692.

25   Therefore, the Court **GRANTS** Mr. Baker's summary-judgment motion as to the cause

26   of action for intentional infliction of emotional distress.

27   //

28   //

## G.   Negligence

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998).  "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095 (1991).  "The 'legal duty' of care may be of two general types: (a) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated, or (b) an affirmative duty where the person occupies a particular relationship to others." *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal. App. 4th 1011, 1016-17 (1997) (internal quotation marks omitted).  "In the first situation, [the defendant] is not liable unless he is actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm." *Id.* Furthermore, "'abstract negligence,' without proof of a causal connection between the defendant's breach and the plaintiff's injury, is insufficient to sustain the award." *Saelzler v. Advanced Grp. 400*, 25 Cal. 4th 763, 773 (2001).

There is no evidence before this Court that establishes a causal connection between Mr. Baker's alleged breach of a duty and Mr. Ensign's purported injury. Furthermore, there is undisputed evidence that Mr. Baker "was a duly licensed security officer with [his] guard card in good standing," "was properly trained for [his] job duties at QUALCOMM stadium," and was directly supervised at the time of the incident. (Baker Decl. ¶¶ 10–11.)  The undisputed evidence also strongly suggests that Mr. Baker acted with reasonable care under the circumstances.  Accordingly, the Court **GRANTS** Mr. Baker's summary-judgment motion as to the negligence cause of action.

//

//

//

//

1    **IV.    CONCLUSION & ORDER**

2          In light of the foregoing, the Court **DENIES** Mr. Ensign's *ex parte* motion to

3    continue the briefing schedule for the summary-judgment motion, and **GRANTS** Mr.

4    Baker's unopposed motion for summary judgment.  As a result, the Court **DISMISSES**

5    all of Mr. Ensign's causes of action asserted against Mr. Baker.

6          **IT IS SO ORDERED.**

7

8    **DATED: August 29, 2014**

9

10                                              **Hon. Cynthia Bashant**
                                                **United States District Judge**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28