**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

CAMERON BAKER,

Plaintiff/Counter-defendant,

v.

JASON ENSIGN,

Defendant/Counter-claimant.

AND RELATED COUNTERCLAIM AND THIRD-PARTY COMPLAINT

Case No. 11-cv-2060-BAS(WVG)

**ORDER:**

**(1) SUSTAINING CITY DEFENDANTS' OBJECTION; AND**

**(2) GRANTING CITY DEFENDANTS' UNOPPOSED MOTION FOR SUMMARY JUDGMENT**

**[ECF Nos. 157, 172]**

Defendant/Third-Party Plaintiff Jason Ensign's counsel, Mary Frances Prevost, continues her irresponsible pattern of ignoring consequential filing deadlines. Once again, Mr. Ensign and his counsel fail to timely file an opposition, this time, to Third-Party Defendants City of San Diego, William Lansdowne, and David Spitzer's summary-judgment motion.[1] (*See* August 29, 2014 Order 6:24–11:14.)

//

[1] The remaining third-party defendants associated with the City of San Diego include the City of San Diego ("City"), William Landsdowne, and David Spitzer. Collectively, they will be referred to as the City Defendants.

The growing list of missed deadlines and failures to follow court orders include, among others: (1) failure to timely oppose Cameron Baker's summary-judgment motion (ECF Nos. 101, 152); (2) failure to oppose or file a statement of non-opposition[2] to City Defendants' motion to exclude expert (ECF Nos. 158, 173); (3) failure to oppose or file a statement of non-opposition to City Defendants' motion to dismiss (ECF Nos. 84, 105); and (4) failure to oppose or file a statement of non-opposition to Mr. Baker's motion to dismiss (ECF Nos. 68, 70).[3] The Court has previously admonished Ms. Prevost at least twice for her untimeliness and noncompliance. (*See* ECF Nos. 147, 152.) She has even been sanctioned in this case for "repeatedly attempt[ing] to evade her discovery responsibilities" and "miss[ing] a number of deadlines, not only those mutually agreed upon between counsel, but also those ordered by the Court." (April 16, 2014 Order 9:22–10:5, ECF No. 85; *see also* August 25, 2014 Order 3:5–12, ECF No. 151 ("[Ms. Prevost] continues to challenge the Court's patience with this woefully inadequate Renewed Motion that fails to meet the minimum requirements that the Court unequivocally set.").)

On November 3, 2014, City Defendants filed their summary-judgment motion with a December 15, 2014 hearing date. In accordance with Civil Local Rule 7.1(e)(2), Mr. Ensign's opposition brief was due on December 8, 2014. But December 8, 2014 came and went without any action by Mr. Ensign. Instead, City Defendants filed a notice indicating to the Court that Mr. Ensign had failed to timely file an opposition to their summary-judgment motion. (ECF No. 163.) Seven days passed before Mr. Ensign finally filed his opposition brief. (ECF No. 165.) The very next day, City Defendants understandably filed an objection requesting that the Court not consider Mr. Ensign's untimely opposition brief. (ECF No. 172.) The Court **SUSTAINS** that

[2] In response to a motion, Civil Local Rule 7.1(e)(2) requires an opposing party to either file an opposition or a statement of non-opposition.

[3] In addition to filing an untimely opposition to an earlier summary-judgment motion filed in this case, Mr. Ensign's counsel also filed an untimely opposition to another summary-judgment motion in a different case against the City of San Diego that is also before this Court in *Holguin v. City of San Diego*, Case No. 11-cv-2599-BAS(WVG), ECF Nos. 46, 55–56.

objection.

Rule 6(b) states that "[w]hen an act may or must be done within a specified time, the court may, for good cause extend the time . . . with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires." Fed. R. Civ. P. 6(b)(1)(A). "Once the time has expired, a noticed motion for relief, based on a showing of excusable neglect, is required." *Gurvey v. Legend Films, Inc.*, No. 09-cv-942, 2012 WL 4061773, at *5 (S.D. Cal. Sept. 14, 2012) (Battaglia, J.) (citing Fed. R. Civ. P. 6(b)(1)(B)).

The Ninth Circuit has held that, for purposes of Rule 6(b), "excusable neglect" must be judged by the standard set forth in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993). *See Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (citing *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 825 n.4 (9th Cir. 1996)) ("[T]his court [has] held that the Supreme Court's analysis of 'excusable' neglect in *Pioneer* is applicable to Rule 6(b)[.]"). Under *Pioneer*, a "determination of whether neglect is excusable is an equitable one that depends on at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223-24 (9th Cir. 2000) (citing *Pioneer*, 507 U.S. at 395).

Mr. Ensign and his counsel make no attempt whatsoever to explain the untimely opposition brief. He wholly fails to carry his burden under Rule 6(b) requiring a demonstration of excusable neglect. This is not a circumstance when silence is an acceptable course of action. *See* Fed. R. Civ. P. 6(b).

Relying on Rule 6(b), the Court **SUSTAINS** City Defendants' objection for Mr. Ensign's failure to demonstrate excusable neglect. Furthermore, by operation of Civil Local Rule 7.1(e)(7)—which states that "[t]he clerk's office is directed not to file untimely motions and responses thereto without the consent of the judicial officer

assigned to the case"—the Court **ORDERS** the Clerk of the Court to strike Mr. Ensign's opposition (ECF No. 165) from the docket.

The Court will proceed without considering Mr. Ensign's untimely opposition in reviewing City Defendants' summary-judgment motion, which the Court finds suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** City Defendants' summary-judgment motion.

## I. BACKGROUND[4]

### A. Mr. Ensign's Contact with Stadium Security

This case arises from an incident that occurred on November 29, 2009 at a football game that took place at Qualcomm Stadium. (Ensign Dep. 41:24–42:11.) At that time, Cameron Baker was an employee of Elite Show Services, Inc. ("Elite"), which had been hired by the San Diego Chargers to provide private security services at their football games. (Baker Decl. ¶ 1, ECF No. 101-4.) Mr. Baker was a private security guard who provided security services at the San Diego Chargers football games at Qualcomm Stadium. (*Id.*)

On November 29, 2009, Mr. Baker and his partner were directed by radio to respond to "a white male fan who was reportedly being unruly and disruptive." (Baker Decl. ¶ 2.) When they arrived at the scene, Mr. Baker "saw a white male, who [he] later learned was Mr. Ensign[,]" who "was standing up on the stairway and was belligerently waving his middle finger in a 'fuck you' gesture at other spectators[.]" (*Id.*; *see also* RFA Nos. 3–4, 7–8, ECF No. 101-5.) Mr. Ensign admits that he drank alcohol prior to and during the football game. (RFA Nos. 5–6; *see also* Ensign Dep. 53:22–25, 54:20–55:3, 58:9–19, 60:23–61:1.) Mr. Baker approached Mr. Ensign and

---

[4] City Defendants cite to several exhibits included in Cameron Baker's summary-judgment motion. (*See* City Def.'s Mot. 2:24–25, 3:3–4:19.) In granting Mr. Baker's summary-judgment motion, the Court found that Mr. Ensign admitted to requests contained in the Requests for Admission (Set One) ("RFA") under Federal Rule of Civil Procedure 36(a)(3). The matters in the RFAs are deemed admitted also for the purposes of this order. *See* Fed. R. Civ. P. 36(a)(3).

"asked him to follow [them] into the hallway of the stadium." (Baker Decl. ¶ 2.) According to Mr. Baker, that was "standard procedure" because any interaction between Mr. Ensign and the security guards standing in front of other spectators would obstruct their view of the game. (*Id.*)

Mr. Ensign was not compliant. (*See* Baker Decl. ¶ 3.) Instead, he "grabbed onto a handrail and shouted 'Fuck you! I'm not going anywhere!'" (Baker Decl. ¶ 3; *see also* RFA Nos. 11–12.) At that point, Mr. Baker and two of his colleagues "tried to remove Mr. Ensign's hands from the handrail." (Baker Decl. ¶ 3.) As Mr. Baker removed one hand, "Mr. Ensign pulled it away from [Mr. Baker's] grip and punched [him] in the face." (*Id.*; *see also* RFA No. 14.)

Eventually, Mr. Baker and his colleagues removed Mr. Ensign into the hallway of the stadium where "Mr. Ensign continued to utter obscenities and make threats towards security officers." (Baker Decl. ¶ 5; *see also* RFA Nos. 10, 15–21.) The security guards, including Mr. Baker, "tried to restrain [Mr. Ensign] with as little force necessary, but he continued to resist." (Baker Decl. ¶ 5.) They "continued to ask [Mr. Ensign] to comply with [their] requests, but Mr. Ensign continued to disobey security officer directives." (*Id.*)

Mr. Ensign was subsequently taken into custody by the San Diego Police Department ("SDPD"). (Baker Decl. ¶ 5.)

**B. San Diego Police Department's Investigation and Arrest**

Once in the custody of the SDPD, Mr. Ensign's first interaction was with Acting Detective David Spitzer, who has since been promoted to the rank of Detective. (Ensign Dep. 106:19–107:10; Spitzer Decl. ¶¶ 1, 5.) Elite security guards had already placed Mr. Ensign in handcuffs following a citizen's arrest before he was brought to the prisoner processing area. (Spitzer Decl. ¶ 5.) Detective Spitzer "was not present during the interaction between Jason Ensign, Cameron Baker, and the other Elite security guards" that preceded Mr. Ensign's arrival at the prisoner processing area.

(Spitzer Decl. ¶ 4.)

Detective Spitzer has been a police officer with SDPD for over 24 years, and has worked Chargers games for over 20 years. (Spitzer Decl. ¶¶ 1–2.) He was on duty as a police officer for the Chargers game on November 29, 2009. (*Id.* ¶ 2.) Detective Spitzer was stationed "inside the prisoner processing area at Qualcomm Stadium investigating crimes that occurred onsite[.]" (*Id.*) According to Detective Spitzer, "whenever Elite security guards bring to the prisoner processing area an individual that they had placed under citizen's arrest, for example for battery or vandalism, [he] conduct[s] an independent investigation, including interviews, to determine if probable cause exists to effectuate an arrest." (*Id.* ¶ 3.)

Detective Spitzer began his independent investigation by interviewing Mr. Ensign. (Spitzer Decl. ¶ 7.) He observed Mr. Ensign "appeared to be under the influence of alcohol due to his slightly slurred speech, lack of comprehension of some simple questions which [he] had to repeat several times before [Mr. Ensign] understood them, as well as [Mr. Ensign's] physical appearance, which included red and glassy eyes." (*Id.*) Mr. Ensign admitted to Detective Spitzer that "he had several alcoholic beverages throughout the day." (*Id.*) He also admitted that "he pointed his middle finger at the crowd during the Chargers game, which prompted his ejection by the Elite security guards," and that "he resisted arrest by Elite security guards and willfully thrashed about." (*Id.* ¶ 8; Ensign Dep. 215:4–216:8, 218:7–15.) Mr. Ensign also told Detective Spitzer that he was trained in jiu-jitsu. (Spitzer Decl. ¶ 8; Ensign Dep. 198:8–199:12, 241:17–242:1.) In fact, Mr. Ensign testified that he was trying to prevent the Elite security guards from gaining control of his body, "similar to jiu-jitsu." (Ensign Dep. 241:17–242:1.) Detective Spitzer further observed that Mr. Ensign was "a large man, approximately 6'3" in height and 230 pounds in weight." (Spitzer Decl. ¶ 8.) The interaction between Detective Spitzer and Mr. Ensign lasted about 20 minutes. (Ensign Dep. 110:23–111:1.)

//

Although Detective Spitzer observed that Mr. Ensign had a small cut under his nose and abrasions to his elbow, Mr. Ensign declined medical treatment. (Spitzer Decl. ¶ 18.) Detective Spitzer also did not observe Mr. Ensign requesting medical attention from anyone else. (*Id.*; Ensign Dep. 134:21–23.) He also points out that he did not touch Mr. Ensign at any time and did not observe anyone else applying any force on Mr. Ensign. (Spitzer Decl. ¶ 15; Ensign Dep. 111:15–22, 122:2–6, 128:1–14, 129:24–130:4, 246:6–8.) According to Detective Spitzer, Mr. Ensign never complained about any force applied to him by any SDPD officer or personnel. (Spitzer Decl. ¶ 16; Ensign Dep. 111:15–22, 112:19–22, 129:24–130:4.) Mr. Ensign did not complain "that his flex cuffs or handcuffs were too tight or causing him any discomfort or pain." (Spitzer Decl. ¶ 17; Ensign Dep. 112:19–22.) He never asked for access to drinking water or complained that he was thirsty. (Spitzer Decl. ¶19; Ensign Dep. 137:19–22.)

The six Elite security guards involved in the incident were also interviewed. (Spitzer Decl. ¶ 9; Ensign Dep. 115:13–15.) By Detective Spitzer's assessment, "[e]ach of the security guards provided substantively consistent statements that Mr. Ensign hit and bit some of them; that Mr. Ensign resisted when they attempted to eject him from the stadium; that it took six security guards to take Mr. Ensign into custody; [and] that Mr. Ensign bit three security guards and punched and kicked all six[.]" (Spitzer Decl. ¶ 9.) The security guards also reported various property damage. (*Id.*) Detective Spitzer took photographs of the observed injuries and property damage. (*Id.* ¶ 10.)

Detective Spitzer also interviewed Mr. Ensign's girlfriend, "who appeared to have consumed several alcoholic beverages, as her speech was slurred and her eyes were red." (Spitzer Decl. ¶ 11; Ensign Dep. 119:8–11.) She reported that "she did not see Mr. Ensign make any obscene gestures, but that she did see him raise his arms into the air." (Spitzer Decl. ¶ 11; *see* Ensign Dep. 235:15–18.) She added that "the security guards grabbed Mr. Ensign and threw him to the ground and struggled with him."

(Spitzer Decl. ¶ 11.)

Because the game was either over or almost over and large crowds were leaving the stadium, Detective Spitzer "did not canvass the crowd at the stadium to ask if anyone else had witnessed the struggle[.]" (Spitzer Decl. ¶ 14.) He concluded that "it would have been difficult and unreasonable to try to locate any witnesses," and "given the apparent relatively minor injuries and damage, the noise level at the stadium, and the large crowds, it would have been unreasonable . . . to locate fans who had been sitting in that specific area, and stop them from leaving the stadium to ask whether anyone had seen the struggle." (*Id.*)

Based on his independent investigation, Detective Spitzer believed there was probable cause to arrest Mr. Ensign for violating California Penal Code § 234(a) for Battery on Person. (Spitzer Decl. ¶ 12.) He then placed Mr. Ensign under arrest. (*Id.*)

### C. Procedural History

Sometime thereafter, Mr. Baker commenced a lawsuit against Mr. Ensign in the San Diego Superior Court. The complaint for that state-court action was not provided to this Court. On June 24, 2011, Mr. Ensign filed a cross complaint and third-party complaint against Mr. Baker, Elite and several of Elite's employees, and the City of San Diego and several of the City's officials.[5] On September 6, 2011, City Defendants removed the cross complaint, which includes only the counterclaim and third-party complaint, to federal court.

On March 31, 2014, Mr. Ensign filed a Second Amended Cross Complaint and First Amended Third Party Complaint for Damages ("SACC"), asserting eight causes of action: (1) violation of civil rights under 42 U.S.C. § 1983 for excessive force, false arrest, "First Amendment violation," and "retaliation for exercising First Amendment rights"; (2) unlawful custom and practice under § 1983, also referred to as a *Monell*

---

[5] On January 8, 2014, Elite, Parham Hirari, Tyler Wenbourne, Matthew Keasler, Joel Brase, and Jason Biggers were dismissed as defendants from Mr. Ensign's action. (ECF No. 70.)

claim; (3) malicious prosecution; (4) violation of the California Civil Rights Act; (5) assault and battery; (6) intentional infliction of emotional distress; (7) negligence; and (8) injunctive and declaratory relief. (ECF No. 82.) Only the causes of action for civil-rights violations, unlawful custom and practices, and injunctive and declaratory relief are asserted against City Defendants. Following the Court's June 3, 2014 order, the only remaining causes action include the Fourth Amendment false-arrest and Fourteenth Amendment excessive-force claims brought under § 1983 against Detective Spitzer, and the *Monell* claim against the City and Mr. Lansdowne.

City Defendants now move for summary judgment for remaining causes of action asserted against them. The motion is effectively unopposed for the reasons discussed above resulting from Mr. Ensign's failure to timely file his opposition brief and his failure to comply with Rule 6(b).

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.

*Id.* at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 242, 252). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

//

A district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition. *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994). The court may, however, grant an unopposed motion for summary judgment if the moving party's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact. *See Carmen*, 237 F.3d at 1029.

## III. DISCUSSION

### A. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 28 (1988). Section 1983 is not itself a source of substantive rights, but merely provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). It "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted). Indeed, "private parties are not generally acting under color of state law." *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991).

The scope of Mr. Ensign's § 1983 claim as asserted in the SACC includes alleged violations of the Fourth and Fourteenth Amendments of the U.S. Constitution resulting from the alleged use of "excessive and unreasonable force," "unlawful arrest and booking," "unlawful uses of force," and "illegal detention and arrest." (SACC ¶ 30.) These claims are asserted against Detective Spitzer and not the City or Mr. Lansdowne.

//

//

**1. False Arrest**

Warrantless arrest without probable cause violates the Fourth Amendment. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). "Probable cause exists when, at the time of arrest, the agents know reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense." *Allen v. City of Portland*, 73 F.3d 232, 237 (9th Cir. 1995) (quotation marks and citation omitted). Where the source of police information about a suspect is an eyewitness to the crime, probable cause to arrest the suspect may exist even in the absence of an independent showing of the reliability of the source so long as the witness is fairly certain of the identification. *See United States v. Hammond*, 666 F.2d 435, 439 (9th Cir. 1982). Additionally, probable cause must be individualized to the specific person arrested. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

The undisputed evidence before this Court supports City Defendants' contention that probable cause existed to arrest Mr. Ensign based on Detective Spitzer's independent and thorough investigation. Detective Spitzer interviewed everyone involved in the physical confrontation between the Elite security guards and Mr. Ensign in addition to Mr. Ensign's girlfriend. (*See* Spitzer Decl. ¶¶ 8–9, 11.) He observed behavior from Mr. Ensign consistent with being under the influence of alcohol, and diligently photographed all physical injuries and property damage. (*See id.* ¶¶ 7, 9–10.) From his investigation, Detective Spitzer was presented with "very consistent statements about Mr. Ensign battering, biting [the six Elite guards]," Mr. Ensign's own "statement in which he admitted that he resisted arrest willfully and thrashed about," and received "no contradictory statements from any witnesses that came forward, including all of the people that followed [Mr. Ensign] down to the prisoner processing area." (Spitzer Dep. 51:16–52:2.) Relying on the aforementioned facts and his 20-plus years of experience working Chargers games, Detective Spitzer justifiably determined that probable cause existed to arrest Mr. Ensign. *See Allen*, 73

F.3d at 237.

Detective Spitzer's probable-cause determination is further supported by Mr. Ensign's admissions. Mr. Ensign admits that he uttered obscenities towards the Elite guards, fought with and struck them, and struggled and resisted being taken into custody, causing physical injury to the guards and damage to personal property. (RFA Nos. 11–14, 16–19.) He even admits that he punched Mr. Baker in the face and battered security guards prior to being taken into police custody . (RFA Nos. 14, 21.)

Drawing all of the inferences in light most favorable to the nonmoving party, the Court concludes that City Defendants are entitled to summary judgment on the false-arrest claim. *See Matsushita*, 475 U.S. at 587. Based on the undisputed evidence before this Court, including Mr. Ensign's admissions (*see* RFA No. 27), Detective Spitzer was justified by probable cause in arresting Mr. Ensign for battery under California Penal Code § 234(a). *See Anderson*, 477 U.S. at 355.

**2. Excessive Force**

Use of excessive force violates the Fourth Amendment when the force applied is greater than is reasonable under the circumstances. *Santos v. Gates*, 287 F. 3d 846, 854 (9th Cir. 2002). Excessive force is an objective determination that can include pointing guns at unarmed individuals, use of handcuffs, or force of any kind if a fact-finder determines it was not necessary to an objectively reasonable police officer in the circumstances. *Graham*, 490 U.S. at 397; *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 538 (9th Cir. 2010); *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993). "[S]ummary judgment . . . in excessive force cases should be granted sparingly." *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010) (quoting *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005)) (internal quotation marks omitted).

Whether an individual has been subjected to excessive force under the Fourth Amendment requires consideration of the reasonableness standard set forth in *Graham*. 490 U.S. at 395. To determine whether officers used excessive force during an arrest,

courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake," looking to (1) the severity of the crime at issue, (2) whether the plaintiff posed an immediate threat to the safety of the officers or others, and (3) whether the plaintiff actively resisted arrest or attempted to evade arrest by flight. *Id.* (internal quotation marks omitted). The threat posed by the suspect is the most important factor. *Smith*, 394 F.3d at 689. Then the court must consider the totality of the circumstances and weigh the gravity of the intrusion against the government's interest in order to determine whether the force employed was constitutionally reasonable. *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003). "'[R]easonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

When weighing an excessive-force claim, summary judgment is appropriate if the Court "concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Scott v. Heinrich*, 39 F.3d 912, 915 (9th Cir. 1994). Alternatively, "the court may make a determination as to the reasonableness where, viewing the evidence in the light most favorable to [the plaintiff], the evidence compels the conclusion that [the officers'] use of force was reasonable." *Hopkins v. Andaya*, 958 F.2d 881, 885 (9th Cir. 1992). The Court can therefore grant summary judgment if the force the officers used was appropriate in any circumstance, or if the circumstances in the specific case were such that the only conclusion is that the force was reasonable.

There is no evidence before this Court that any force, excessive or not, was applied by Detective Spitzer or any other SDPD officer or employee. Mr. Ensign confirms as much in his own deposition testimony. (*See* Ensign Dep. 122:2–6, 246:6–8.) Given that the undisputed evidence shows that Mr. Ensign was subjected to *no* force by Detective Spitzer, the Court need not proceed to the issue of whether any force applied was excessive. To state it more plainly, without an application of force,

there simply cannot be any *excessive* force. *See Santos*, 287 F. 3d at 854 Accordingly, City Defendants are entitled to summary judgment as to the purported application of excessive force. *See id.*

**B. *Monell***

Municipalities are "persons" under 42 U.S.C. § 1983 and thus may be liable for causing a constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). *Monell* liability may arise when a locality has an "official custom or policy" that requires its officers to engage in illegal behavior. *Connick v. Thompson*, — U.S. —, 131 S. Ct. 1350, 1359 (2011). Under *Monell*, to prevail in a civil action against a local governmental entity, a plaintiff must establish "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir.1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)). A policy is "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 1477 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (plurality opinion)).

A municipality may not be sued under § 1983 solely because an injury was inflicted by its employees or agents. *Monell*, 436 U.S. at 694. It is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible. *Id.*

The only officers through which Mr. Ensign could possibly assert a *Monell* claim are Detective Spitzer and Mr. Lansdowne. Mr. Lansdowne was the Chief of Police for SDPD at the time of the November 2009 events; he otherwise had no personal involvement in the arrest of Mr. Ensign. (Lansdowne Decl. ¶ 1.) That said, the Court

determined above that there was no deprivation of Mr. Ensign's constitutional rights. Probable cause existed to justify Mr. Ensign's arrest, and there was no force applied to Mr. Ensign by Detective Spitzer. In other words, there was no violation of Mr. Ensign's Fourth or Fourteenth Amendment rights. Consequently, Mr. Ensign cannot satisfy the first element for a *Monell* claim, "that he possessed a constitutional right of which he was deprived." *See Oviatt*, 954 F.2d at 1474. Therefore, City Defendants are entitled to summary judgment as to the *Monell* claim. *See id.*

## IV. CONCLUSION & ORDER[6]

In light of the foregoing, the Court **SUSTAINS** City Defendants' objection, **STRIKES** Mr. Ensign's opposition brief (ECF No. 165) pursuant to Civil Local Rule 7.1(e)(7), and **GRANTS** City Defendants' unopposed motion for summary judgment in its entirety.

**IT IS SO ORDERED.**

**DATED: September 22, 2015**

**Hon. Cynthia Bashant**
**United States District Judge**

[6] Even if the Court had considered Mr. Ensign's opposition, which spends considerable time addressing First Amendment claims *not* asserted against City Defendants, the outcome would have likely been the same.